## EDGAR REAGAN v. W. C. BRUFF.

Decided February 12, 1908.

Contract—Construction—Duty of Court.

When there is no ambiguity in an instrument and the intention of the parties may be ascertained from its terms without explanation, it is the duty of the court to construe it for the jury and to instruct them as to the rights of the parties. Contract concerning the operation of a cotton press considered, and held to be free from ambiguity or technical words and such as called for a peremptory instruction from the court in favor of the defendant.

Appeal from the District Court of Bexar County. Tried below before Hon. J. L. Camp.

*Ogden, Brooks & Napier,* for appellant.

*Cocke & Cocke,* for appellee.—Where the evidence develops a latent ambiguity in a contract, as in this case, it is the province of

the jury to pass on and determine the meaning of the contract, and it is the duty of the trial court, as was done in this case, to submit that issue to the jury. Linney v. Wood, 66 Texas, 22; Frost v. Erath Cattle Co., 81 Texas, 505; Kingston v. Pickins, 46 Texas, 101; Giddings v. Day, 84 Texas, 605; Hamman v. Keigwin, 39 Texas, 34; Shaw v. Parvin, 1 App. C., secs. 366 and 974; Cross & Eddy v. Graves, 4 App. C., sec. 103.

NEILL, ASSOCIATE JUSTICE.—Bruff sued Reagan to recover $1,-060.47 alleged to be due under the terms of the contract copied in our conclusion of fact. It was alleged that defendant obligated himself to pay one-half of certain sums that had been advanced by plaintiff for the purpose of promoting and placing in operation what is known as the Reagan Round Bale Cotton Press; that plaintiff had advanced under the contract $2,120.94, of which one-half was due him by the defendant; that under the terms of the contract the one-half of the money so advanced was not to be due him unless said invention was a success; that it was a success, and that defendant had sold his interest therein to the Reagan Round Bale Company.

The defendant answered by a general denial, and pleaded that plaintiff had agreed with him to furnish the money and means to carry out and put the invention referred to on the market; that he had conveyed plaintiff a one-half interest in the patent to the invention in consideration of his agreement to furnish the money and necessary means to float the invention and make it a success; that after securing said contract, plaintiff abandoned all efforts to make any further progress in making a success of the invention and refused to put up any more money in furtherance of the enterprise; that on July 1, 1905, after plaintiff had refused to put up the necessary money, defendant succeeded in securing the Reagan Round Bale Company to take hold of the patent and that he received for his remaining interest therein $2800 stock in said company; that he never received any dividends or returns therefrom; that the plaintiff sold his interest in the patent to the same company, and realized therefrom about $2500 in cash and $900 in stock. Defendant's answer also contains a counterclaim against plaintiff for a breach of said contract in failing to put up the necessary money to float the invention.

The court peremptorily instructed the jury to find for plaintiff on defendant's counterclaim, and a trial of the case on plaintiff's demand resulted in a verdict in his favor for the sum of $1,005.47, the verdict being also in his favor under the peremptory instruction against defendant on his cross-action.

*Conclusions of Fact.*—The contract sued on is as follows:

"Agreement and Lien.

"The State of Texas,}
County of Wilson. }
"Know all men by these presents: That hereby a contract and agreement is established, made and entered into by and between E.

Reagan and W. C. Bruff, both of said county and State, and is of the following tenor and effect:

"Whereas, the said E. Reagan has heretofore invented a round bale cotton press which was patented to him (and said Bruff assignee of a one-half interest) on the 11th day of September, 1900, by the Patent Office of the U. S. of America; and, whereas, the said W. C. Bruff, as consideration for his interest in said press, so assigned to him has advanced an amount of money approximated at $750 and is legally bound for a sum approximated to be about $800; and, whereas, on this date the said W. C. Bruff had agreed and does agree to furnish an additional sum of $200 to further promote the enterprise of putting said press into operation, said sum or portion thereof to be expended to secure a patent on the last improvements on said press, and for such other purposes as may be deemed necessary: Now, therefore, for and in consideration of the sum so advanced for said purposes, the said E. Reagan hereby agrees that when said presses are built and put into operation and a success made of same, then he is to repay to the said W. C. Bruff one-half (½) of the money heretofore and hereafter expended by him in said enterprise, said half to be paid of the first proceeds of said press to which the said Reagan is entitled. But it is understood that said Reagan is unable to repay said one-half unless a success is made in said presses in the manufacturing and selling of same, and if a failure to make and sell said presses is made then the said Reagan is not legally bound to repay said one-half.

"It is further agreed that the drawings of the improvements on said press heretofore made by W. F. Long, of San Antonio, are the individual property of said Bruff, and same are to be paid for by the company to be organized to manufacture and sell said presses if they desire to purchase same, price to be paid for same being $110, the amount the said Bruff paid for same.

"Witness our hands in duplicate, this March 25, 1901.

(Signed) E. Reagan,<br>W. C. Bruff."

"I concur in the portions of this contract relating to the drawings, that being all in which I am interested and which my interest affects.

(Signed) E. B. Cocke."

In pursuance of the contract, Reagan assigned to Bruff a one-half interest in the invention, and Bruff expended $2,120.94 in furtherance of the enterprise evidenced by the agreement. The undisputed evidence shows that no presses were built or put into successful operation by the parties or either of them; but that each party sold his interest in the patent to other parties, no success having been made in the manufacture and sale of presses under the patent; nor did defendant ever realize anything from the sale of any press or presses manufactured under the patent right.

There was much testimony introduced on other questions, which, under our view of the case, was immaterial and foreign to any real

issue involved; and no findings will, therefore, be made on such testimony.

*Conclusions of Law.*—Under the first assignment of error, which complains of the court's refusal to peremptorily instruct a verdict for the defendant; and the second, which complains of its refusal of defendant's motion, made at the close of plaintiff's testimony, to instruct a verdict for defendant, appellant advances these propositions:

"Inasmuch as the contract sued on in this case shows on its face that whatever sum defendant was to pay plaintiff thereunder was to be paid out of the proceeds of said press, and that defendant was not to be liable to plaintiff unless a success was made in the manufacturing and selling of said presses, and as. the undisputed evidence shows that none of said presses were ever sold and that the only proceeds that the defendant had ever received was $2800 in stock, which was given him for his remaining interest in the patent, the court should have instructed the jury to return a verdict for the defendant."

"Where there is no ambiguity in an instrument and the intention of the parties may be ascertained from its terms without explanation, it is the duty of the court to construe it for the jury and to instruct them as to the rights of the parties."

In our opinion both propositions are correct and are directly applicable to the case made by the pleadings and undisputed evidence.

It is ordinarily for the court to determine the construction of contracts—not to state rules and principles of law to govern the jury in construing language which the parties have used—but to give the jury, as matter of law, what the legal construction of the contract is, and the jury is bound to take absolutely the construction so given. The rule which governs a court in construing a contract is, to ascertain what the parties themselves meant and understood. Under this rule the court will not always construe a contract to mean that which the parties to it meant; but will give it the construction which will bring it as near to the actual meaning of the parties as the words they saw fit to employ, when properly construed, and the rules of law, will permit. In other words, courts can not adopt a construction of any legal instrument which will do violence to the rules of language, or to the rules of law. 2 Parsons on Contracts (9th ed.), 650. If the parties have used words which have an ordinary meaning free from ambiguity, and no technical meaning is shown, extrinsic evidence is inadmissible to show that the parties used such terms in a sense different from their ordinary meaning, as the only effect of such evidence would be to contradict the legal effect of the language which the parties themselves have used. It is only in cases where the words of writing are, when read in connection with the entire writing, ambiguous or of doubtful import, that resort can be had in aid of their interpretation to extrinsic evidence. Adams v. Turner, 73 Conn., 38, 46 Atl., 247; Chase v. Ainsworth, 97 N. W. (Mich.), 404; Page on Contracts, sec. 1111. If words employed were those intended to be used, but their actual meaning was totally different from that which the parties supposed

and intended them to bear, still their actual meaning is generally held to be their legal meaning. Though, upon sufficient proof that the contract did not express the meaning of the parties, it may be set aside. Still, a contract which the parties intended to make, but did not make, can not be set up in the place of one which they did make, but did not intend to make. Parsons on Cont., 651. True, equity may grant relief from a mistake in a contract where there is fraud or the mistake is mutual. Benn v. Pritchett, 163 Mo., 560, 63 S. W., 1103.

It is not claimed in this case that there is any mistake in the language used in the contract sued upon. The suit is predicated upon it just as it was written; the language used is plain and free from any ambiguity or technical meaning; it presents no difficulty of construction, nor anything that would authorize a court to submit it to a jury for interpretation. It is too clear for discussion that, under the law, it was the duty of the court to construe the contract, and inform the jury as to the rights of the parties under it. Soell v. Hadden, 85 Texas, 182; Smith v. Texas & N. O. R. Co., 105 S. W., 531; Bruner v. Strong, 61 Texas, 557; Tinsley v. Penniman, 12 Texas Civ. App., 591; Linch v. Paris Lumber Co., 14 S. W., 701; Lary v. Young, 27 S. W., 908; Oklahoma City & T. R. Co. v. Dunham, 88 S. W., 849. Therefore, as it was expressly understood that Reagan was unable to repay said one-half unless a success was made in the manufacture and selling of the presses, and it was stipulated that if a failure to make and sell said presses should be made he would not be bound to repay said one-half, and as the undisputed evidence clearly shows there was such failure, Bruff was not entitled, by the very contract upon which he based his action, to recover anything and the court should have so instructed the jury, as defendant requested.

What we have said in disposing of these assignments of error demonstrates that all the others are well taken, and that the judgment should be reversed and judgment here rendered for appellant, which is accordingly done.

*Reversed and rendered.*