## MOORE v. STUDEBAKER BROS. MFG. CO.

(Court of Civil Appeals of Texas. April 8, 1911.)

1. MASTER AND SERVANT (§ 70*)—CONTRACT OF EMPLOYMENT—CONSTRUCTION.

A contract employing a traveling salesman to take orders for a monthly salary and expenses, and for a commission on shipments into his territory during the year in excess of a specified sum, provided that in estimating the shipments into the territory such shipments as should be made on orders taken by a third person prior to a designated date should not be included, was unambiguous and must be construed according to its import, and he could not recover commissions on shipments into the

territory pursuant to mail orders sent therefrom.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 70.*]

2. REFORMATION OF INSTRUMENTS (§ 36*)—CONTRACT OF EMPLOYMENT — ACTIONS—PETITION.

A petition, in an action by a traveling salesman for commissions due under a contract stipulating for commissions on shipments into his territory during the year in excess of a specified sum, which alleged that, if the word "shipment" should not be construed as synonymous with the word "order," the word "shipment" was fraudulently inserted in the contract by the employer, without any notice of the fraud by the salesman, and that the contract should be reformed or construed so as to allow him commissions on all orders taken during the year, though shipments did not occur until after the end of the year, did not sufficiently allege fraud or mistake in the contract, and correspondence between the parties prior to the execution of the contract could not be considered.

[Ed. Note.—For other cases, see Reformation of Instruments, Dec. Dig. § 36.*]

3. EVIDENCE (§ 448*) — PAROL EVIDENCE—UNAMBIGUOUS CONTRACT.

Where a contract is unambiguous, parol evidence is not admissible to show the construction placed thereon by the parties.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. § 448.*]

4. EVIDENCE (§ 461*)—PAROL EVIDENCE—UNAMBIGUOUS CONTRACT.

A written contract which is clear and certain in its terms must be deemed to express the intention of the parties, and all preliminary negotiations are merged in the writing, and parol evidence is inadmissible to show that the parties used language in a sense different from its ordinary meaning.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2129–2133; Dec. Dig. § 461.*]

5. EVIDENCE (§ 461*)—PAROL EVIDENCE—UNAMBIGUOUS CONTRACT.

Where a contract of employment was plain and free from ambiguity, the testimony of one of the parties as to his understanding of the contract was properly excluded.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2129–2133; Dec. Dig. § 461.*]

6. CONTRACTS (§ 93*)—VALIDITY—MISTAKE.

A party to a contract reduced to writing, who knowingly signed the contract without being induced to do so by any representation by the adverse party, and who was mistaken only as to the legal effect of the terms employed in the contract, and not as to the language of the contract itself, is bound by the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 415–419; Dec. Dig. § 93.*]

7. COSTS (§ 42*)—EFFECT OF TENDER.

A demand due for compensation under a contract employing a traveling salesman to take orders for a fixed salary per month, and for commissions on shipments into his territory during the year in excess of a specified amount, is capable of being made certain by mere computation, and a tender of the amount due is good, and the salesman failing to recover an amount in excess of the tender is properly charged with costs.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 137–164; Dec. Dig. § 42.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Y. L. Moore against the Studebaker Bros. Manufacturing Company. From a judgment granting partial relief, plaintiff appeals. Affirmed.

Morris & Pope and Crow & Donalson, for appellant. Lewis & Phillips, for appellee.

BOOKHOUT, J. Y. L. Moore, appellant, filed this suit September 18, 1907, in the district court of Dallas county to recover of the Studebaker Bros. Manufacturing Company, appellee, commissions due him as traveling salesman on orders taken by him during the term of his employment, embracing the year 1906, on which shipments were afterwards made during 1906, or after that time in 1907, and also on shipments into the territory assigned him for 1906, on voluntary or mail orders shipped into said territory during that year.

Appellant was paid a salary of $200 per month and his expenses, under a written contract so providing, and no question is made as to these matters. The commissions claimed herein were based upon a separate written contract, made at the same time as the salary contract, under which he claims he was entitled to commissions in excess of $100,000 on all orders taken by him during 1906 to the amount of $17,500, a commission of 2 per cent., and in excess of the $17,-500 a commission of 1 per cent. The contract hinges on the construction and use of the word "shipment" claimed by appellant to have been slipped into the contract as a "joker" to give a covert or hidden meaning to it contrary to the expressed meaning of the parties made before and at the time the contract was executed, and this covert or hidden meaning is now relied upon by appellee to deprive appellant of his just rights.

The trial was before the court and a jury, and under an instructed verdict the jury found for plaintiff $73.15, and the judgment was so rendered for said amount December 13, 1909. The court also found a tender of said sum had been made by defendant to plaintiff before the suit was filed, and plaintiff was adjudged to pay all court costs. Plaintiff excepted to the judgment, and perfected an appeal.

[1] It is assigned that "the court erred in sustaining the defendant's eleventh special exception to so much of plaintiff's allegations in his first amended original petition as seeks to recover commissions on voluntary or mail and other orders received and shipped by defendant during 1906 to the territory assigned to plaintiff."

Plaintiff, in his pleadings, set out the contract upon which the suit is based, and under which he claimed commissions as follows: "We will pay you on shipments during 1906 in excess of $100,000 into territory in Western Texas, assigned you, as follows: On shipments over and above $100,000.00 to the amount of $17,500.00 a commission of 2

per cent.; on the excess shipments above $17,-500.00 a commission of 1 per cent. to be paid. In estimating the shipments into the territory for 1906 such shipments as shall be made on orders taken by D. L. Countryman, prior to February 1st, 1906, shall not be included."

After alleging liability for orders taken by plaintiff, he further pleaded as follows: "And defendant received mail and personal orders for the same time from said territory, aggregating the sum of $26,074.62." And further alleged: "That in addition defendant received mail and personal orders during 1906 from the territory traveled by plaintiff and assigned him in said contract, aggregating about $26,074.62, and all the facts bearing thereon are in possession of defendant, and plaintiff cannot give any better description of the same; * * * that he has repeatedly applied to defendant for a list of such mail orders and all orders sent in by plaintiff, and defendant has declined and refused to furnish same, and he can give no better description of any of said sales or orders than herein stated."

Defendant demurred to the allegations, seeking to recover for mail orders sent from the territory named in the petition to the defendant, and all other orders than those solicited and obtained by plaintiff as alleged by him, for the reason that under the construction of said contract as contended by him he would be entitled to commissions only on orders so obtained by him, and upon no others. The court sustained said exceptions.

Plaintiff then filed a trial amendment, and alleged further on the same matter of mail and other orders than those taken by plaintiff as follows: "Plaintiff alleges that under his contract herein he was to have commissions on all shipments into his territory during 1906, and that as to orders taken by plaintiff he was to have commissions on all orders taken by him, even though shipped after the end of that year, and under the plain import of the contract he was entitled to commissions on all shipments into his territory during 1906, including mail and other orders, and as to this part of the contract the language on its face governs, and the allegations in the amended petition relate mainly to orders taken during 1906; and plaintiff now alleges that under said contract he was entitled to have commissions per its terms on all mail and other orders received by defendant during 1906 from territory assigned to plaintiff; and he now alleges and claims he is entitled to such commissions on sums, which aggregate the sum of $26,074.62, for which he sues, and whereby he says defendant is liable to him for said sum, yet though often requested has failed and refused, and still fails and refuses, to pay same or any part thereof, to his damage in said sum and interest at 6 per cent. per annum since January 1, 1907, and all as alleged in his said amended petition herein, for all of which he prays judgment." Defendant filed similar exceptions to the trial amendment, which the court sustained. We are of the opinion there was no error in sustaining these exceptions. The contract sued on is plain in its terms and free from ambiguity, and must be construed according to its plain import.

An agreed statement was filed in the case by the parties as follows:

"(1) That the aggregate amount of orders obtained by appellant on which shipments were made during 1906 was the sum of $77,-582.89.

"(2) That the aggregate amount of orders obtained by appellant on which shipments were made after 1906, or during the year 1907, was $73,545.77.

"(3) That the aggregate amount of shipments made by appellant during 1906 into said territory or voluntary or mail orders, not solicited or obtained by appellant, nor induced by him in any wise, was $26,074.62."

This statement met the complaint in the petition that all the facts bearing on the allegation as to the amount of shipments on mail and personal orders were in the possession of defendant, and for this reason plaintiff was not able to give a better description of the same.

[2] The second assignment of error is that "the court erred in sustaining defendant's fourth special exception, set forth in paragraph 5 of its said answer, to so much of plaintiff's petition as relates to correspondence between plaintiff and defendant had just prior to signing contract on January 9, 1906, because the same interprets and explains the contract, and especially the use of the word 'shipment' in the contract, and as showing plaintiff was entitled to commissions on all orders taken or sales made by him and shipped during 1906, and also those taken during 1906, but shipped after that date; also commissions on all mail orders from the territory assigned plaintiff and received and shipped during 1906, the claim being for commissions on all shipments in excess of $100,000. Said correspondence also tended to prove the issue of fraud as alleged, and was the basis for the only data furnished defendant from which it prepared the contract signed by plaintiff."

The petition alleged "that said contract, as mutually understood and acted upon by the parties to it, was so construed by each of them, and meant that plaintiff was to have commissions, in excess of $100,000, on all orders taken by him during 1906, except those taken by Countryman, though some of the orders near the end of the year might not be filled and the goods shipped until 1907, since, in such a business as defendant conducted, orders were taken to be filled in future as far ahead as six or eight months; and if the word 'shipment' inserted in said contract could be construed differently, and

deprive him of the fruit of his labors, then he says it was secretly and fraudulently inserted in said contract by defendant, it having prepared same, and he performed same without any notice or knowledge of such fraud; wherefore he asks that it be reformed or construed according to the intent and meaning of the parties, so as to allow him commissions on all orders taken by him during 1906 that were afterward shipped. That all the correspondence between him and defendant, prior to the date of said contract, referred to the matter of his commissions as due on orders taken during the term of his employment, and not technically to goods shipped during that time; for it was impossible for all goods to be shipped on orders taken by him during December 1906, or other nearby months, first, for want of time; second, because defendant was behind at its factory in filling orders, since it had to fill same in the order in which received; and, third, it was customary at that season of the year, in the implement and vehicle trade in which defendant was engaged, for orders to be taken four, six, and more months ahead, and hence it was impossible that all orders taken during 1906 could be shipped during that year, and it was not so contemplated or understood when plaintiff rendered such services, and he never knew of the intended fraud until after the end of the year, when he demanded a settlement under the contract on the basis herein claimed. That about $60,000 of the orders taken by him were taken in December, 1906, and it was impossible they could be filled and the goods shipped that month. That in numerous letters of defendant to plaintiff before and after January 9, 1906, the date of said contract, defendant admitted plaintiff was entitled to commissions on all orders sent in by him, and not technically on 'shipments,' provided the orders were accepted for shipment."

Defendant demurred to the allegations in said petition as to what was contained in correspondence between himself and defendant prior to the date of the contract with respect to the said matter of plaintiff's commissions, for the reason that all of such correspondence preceded the final contract between the parties, which is set out and relied upon by plaintiff herein, and which merged all previous negotiations between them, and whereby all of such correspondence was and is rendered wholly irrelevant. The court sustained said demurrer. There was no error in this action of the court. As stated, the contract on its face is plain and free from ambiguity. The only allegation purporting to set up fraud or mistake in the contract is contained in a recitation in the pleading as follows: "And if by mutual mistake the technical word 'shipment' in the first line of said contract could be construed differently, and deprive plaintiff of the fruit of his labor, then he says it was secretly

and fraudulently inserted in said contract by defendant, since said contract was written and prepared by it, and without any notice or knowledge of said fraud by plaintiff, and without his so understanding the meaning of said word, which in said connection he understood to be synonymous with 'order,' then he comes and asks that the contract be reformed or construed according to the true intent and meaning of the parties, so as to allow him commissions on all orders taken by him during 1906 that were afterwards shipped, even though the shipments did not take place until after the end of this term of employment." This recitation followed an allegation that "said contract, as mutually understood and acted upon by both plaintiff and defendant, was so construed by each of them, and meant that the commissions so allowed would be on all orders taken by plaintiff during the year 1906, with the exception of those taken by Countryman, as stated, though some of them near the end of the year might not be shipped out until during 1907, since, in a business such as that conducted by defendant, often orders are taken to be filled in future as far ahead as six to eight months or more." There was no direct allegation of fraud or mistake in the contract or the manner of its execution. The contract being unambiguous in its terms, and there being no sufficient allegation of fraud in the pleadings, the court correctly sustained appellee's exception to so much of the petition as referred to correspondence had between the parties prior to the execution and delivery of the written contract. Soell v. Hadden, 85 Tex. 186, 19 S. W. 1087; Milliken v. Callahan County, 69 Tex. 210, 6 S. W. 681; B. & L. Ass'n v. Hamm, 36 S. W. 313; Reagan v. Bruff, 49 Tex. Civ. App. 226, 108 S. W. 185.

It is contended in the fourth assignment that the court erred in excluding from the jury the letter of defendant to plaintiff, dated October 26, 1906, written after the contract was executed and during its performance, offered to explain and interpret the contract as to commissions claimed, and as an admission of liability, especially for orders taken during 1906, but shipped after that date, during 1907, and as tending to prove the issue of fraud as alleged in the procuring of the contract for commissions. This assignment is without merit and is overruled.

[3] Where a contract is unambiguous, parol evidence is not admissible to show the construction placed thereon by the parties; and all preliminary negotiations are deemed to have been merged into the written contract. The general rule is that, where the written contract is clear and certain, it must be taken to express the intention of the parties. Soell v. Hadden, supra; Milliken v. Callahan County, supra. In the case first cited, on page 187, 85 Tex., on page 1089, 19 S. W., it is said that: "If there is no am-

biguity about an instrument, and the intention of the parties may be ascertained from the terms thereof without explanation, it is the duty of the court to construe it for the jury and instruct them as to the rights of the parties thereunder. Parol evidence is not admissible to show the construction placed thereon by the parties themselves, when their intent may be ascertained from the contract as reduced to writing by them."

[4] Nor will parol evidence be admitted to show that the parties to a contract used language in a sense different from its ordinary meaning, for such evidence would vary the terms of the contract. Morrison v. Hazzard, 99 Tex. 588, 92 S. W. 33.

[5] It is contended in the fifth assignment that, the contract being ambiguous, and the allegation being made that it was procured fraudulently, the court erred in refusing to allow plaintiff to testify to his understanding and the meaning of the contract as to whether or not he was to have commissions in excess of $100,000 on all orders taken by him during 1906, but accepted and shipped after that time, since for $60,000 and more orders taken the latter part of 1906 shipments could not be made in 1906, since defendant at its factory was four to six months behind on filling orders sent in from all sources, and in due course of mail and delivery of goods from South Bend, Ind., to Texas, shipments could not be made on orders taken near the end of the year until 1907, and plaintiff would have so testified; and also that he was entitled to commissions on all mail orders received from and shipped to the territory assigned him during 1906, since the contract literally covered all sales made and orders taken by plaintiff during 1906 that were shipped the same year, but was indefinite and uncertain as to other claims made by plaintiff, and explanation was necessary to make them certain and definite. This assignment is not sustained. The contract being plain and free from ambiguity, the testimony of appellant, referred to in this assignment, as to his understanding of the contract was properly excluded. Morrison v. Hazzard, supra; Morton v. Morris, 27 Tex. Civ. App. 262, 66 S. W. 98.

The sixth and seventh assignments are grouped, and are as follows: "The court erred in not directing a verdict for plaintiff for the full amount shown by the proof to be due plaintiff, since the undisputed evidence showed plaintiff was entitled to commissions on all orders taken and sales made by him and shipped during 1906, and also those orders taken and sales made during 1906, but shipped after that date, and also all mail and other orders received and shipped during 1906 by defendant to the territory assigned to plaintiff, being all in excess of $100,000." "The court erred in not submitting to the jury the question of plaintiff's right to recover commissions on sales or orders taken, in excess of $100,000, during

1906, and shipped after that time, since such claim for commissions, along with the instructed verdict for $73.15 on which liability is admitted in defendant's answer, cover the entire claim alleged." Under these assignments the proposition is presented, that, if the facts are undisputed and are of such a character as leaves no room for ordinary minds to differ, the court should direct a verdict; but if they are of such a character as leaves room for ordinary minds to differ, then the court should submit the issues of fact to the jury. If it be conceded that this proposition announces a correct rule of law, still it cannot be sustained, for the reason that it is not applicable to the facts of the case.

[6] The testimony of appellant himself was to the effect that he signed the contract as written knowingly and understandingly, and his evidence fails to show that he was induced to do so by any representation or other action upon the part of appellee. At most his case rests upon his being mistaken only as to the legal effect of the terms employed in the contract, and not the language of the contract itself. The appellant's testimony was to the effect that, in October of 1905, prior to the execution of the contract on January 9, 1906, at appellee's office at South Bend, Ind., he, personally, at South Bend, discussed the entire matter with appellee's sales manager, L. F. Weaver, at which time they failed to reach an agreement; that subsequently the matter was resumed by correspondence, and on January 9, 1906, the contract was executed by himself and Weaver in appellee's office in South Bend.

On his further cross-examination he testified as follows: "The stenographer gave me the contracts in duplicate, being the contract sued on in this case, which I took and read over. After reading the contract, without any further conversation with Mr. Weaver or any one else representing the defendant, I signed both copies. Neither Mr. Weaver nor any one else representing the defendant made any statement or representation to me to induce me to sign the contract as it is written. I signed it as it is written. I knew the difference between the terms 'shipments' and 'orders.' I seek in this case to have the contract in question construed so as to allow me commissions on orders for goods that I obtained that were shipped, whether shipped in 1906 or not. If the court should so construe the contract so as to allow me such commissions, as prayed for in my petition, I am satisfied with the contract, and do not wish it reformed. I am willing to let the contract stand as it is, if it is construed by the court in this case as I contend in my petition and ask that it should be construed." Morton v. Morris, supra; Morrison v. Hazzard, supra; B. & L. Ass'n v. Hamm, supra.

[7] We are of opinion that the court correctly adjudged the costs against appellant

on appellee's tender. The demand was capable of being made certain by mere computation, and is not a case of unliquidated damages. The plea of tender was accordingly good. Vol. 28, A. & E. Ency. of Law, p. 10.

Finding no reversible error in the record, the judgment is affirmed.