**AMERICAN SURETY CO. OF NEW YORK v. WM. CAMERON & CO., Inc., et al.**

No. 989.

Court of Civil Appeals of Texas. Waco.

Dec. 31, 1930.

Rehearing Denied Feb. 12, 1931.

Thompson & Barwise and Kelly Shannon, all of Fort Worth, for appellant.

Bryan, Stone, Wade & Agerton, Smith & Rowland, Chas. Kassel, McDonald & Floyd, Slay & Simon, Polk, Sansom & Terrell, Billingsley & Billingsley, and Hyer & Christian, all of Fort Worth, and Hampden Spiller, of Lubbock, for appellees.

BARCUS, J.

In November, 1926, Southwell & Abbott, a partnership, made a contract with T. B. Ellison to construct a warehouse at a cost of $28,144. Under article 5 of the contract, it is provided that the final payment would be made when the work was completed and accepted by the architect, and specifically provides:

"Before issuance of final certificate the contractor shall submit evidence satisfactory to the architect that all pay rolls, material bills and other indebtedness connected with the work have been paid."

Under article 9 the contractors were required to pay for all labor and material used in the construction of the building. Under article 24 the contract provides that the contractor shall submit to the architect, before any receipt or voucher is issued, if required, receipts showing that he has paid for all material, labor, and all subcontractors. Article 25 provides:

"The making and acceptance of the final payment shall constitute a waiver of all claims by the owner other than those arising from unsettled liens from faulty work appearing after final payment or from requirements of the specifications and of all claims by the contractor except those previously made and still unsettled."

Under article 30 the owner had a right to require the contractors to furnish a bond that they would pay all obligations arising out of the erection of the building. Article 32 of the contract provides that the final payment shall not be due until the contractor has furnished receipted bills and releases for all labor and material used for which a lien could be filed. Subdivision "O" of article 37 provided:

"Nothing in this article shall create any obligation on the part of the owner to pay to or to see to the payment of any sums to any sub-contractor."

At the time the said contract was made, Southwell & Abbott furnished a bond in the sum of $15,000, signed by appellant, American Surety Company of New York as surety, and payable to T. B. Ellison, and made the contract a part thereof. Said bond contains the following condition:

"Now therefore, the condition of this obligation is such that if the principal shall faithfully perform the contract on his part and satisfy all claims and demands incurred for the same and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default and shall pay all persons who have contracts directly with the principal for labor or materials, then this obligation shall be null and void, otherwise it shall remain in full force and effect."

On March 7, 1927, the building, having been completed, was accepted by T. B. Ellison, and he paid Southwell & Abbott the balance due on said contract, to wit, $6,717.80, which was by them deposited in the bank for the purpose of paying same to the subcontractors, materialmen, and laborers, but said money was without the consent of Southwell & Abbott used by the bank to pay debts owing by said contractor to said bank. Southwell & Abbott failed to pay Wm. Cameron & Company, Inc., $4,317.34, and Miller Brothers $229.60, and the Southern Ornamental Iron Works $455.54, and the Acme Brick Company $2,180.32, and the Builders' Material Company $47.81, and B. S. Matson $606.60, and Chas. T. Davis $111.84, and the North Texas Iron & Steel Company $966.86, and the Fort Worth Sand & Gravel Company $579.38, and the Collinsville Manufacturing Company $1,074.77,

which they owed said parties for material or labor that was furnished in the construction of said building. None of said parties filed or fixed any lien against the building in accordance with the law, neither did T. B. Ellison have any notice within thirty days after he made the final payment to the contractors that said claims were not paid.

Wm. Cameron & Company, Inc., instituted this suit to recover from Southwell & Abbott, the American Surety Company of New York, and T. B. Ellison the amount of its debt and sought to establish a lien against the property. Each of the other claimants filed pleas of intervention seeking the same recovery. T. B. Ellison, the owner, answered denying liability and specifically alleging that none of the parties were entitled to any lien against the property, and by way of cross-action he sought as trustee for the plaintiff and interveners judgment against Southwell & Abbott, the partnership, and the American Surety Company of New York, for the respective amounts as claimed by Wm. Cameron & Company, Inc., and the various interveners, alleging that he had taken the indemnity bond for their use and benefit and that he was entitled to recover the aggregate of said sums as trustee for said named parties. He further claimed that he was entitled to $1,500 attorney's fees by reason of his having been forced to employ attorneys to defend him against the suit as brought by said parties and in the prosecution of his claim as trustee against appellant American Surety Company of New York and that it was liable therefor under and by virtue of the provisions of the bond. Appellant answered by general demurrer, a number of special exceptions, and specially alleged that it was not liable on the bond to the plaintiff or any of the interveners because the bond was not payable to them and that it was not liable to T. B. Ellison because neither the plaintiff nor any of the interveners had any claim against T. B. Ellison or lien against his property, and it specifically denied the right of T. B. Ellison as owner to recover as trustee for appellees. Southwell & Abbott alleged that they had filed their petition in bankruptcy and had been discharged.

The cause was tried to the court and resulted in judgment being entered for Wm. Cameron & Company, Inc., and each of the named interveners for the amount of their debt against the American Surety Company of New York and in favor of T. B. Ellison against the American Surety Company of New York for $750, attorney's fees, and judgment in favor of Ellison denying any of the parties a personal judgment against him or a lien against his property, and a judgment in favor of Southwell & Abbott on their plea of discharge in bankruptcy. Appellant alone appeals.

■ Appellant, by various propositions, contends that the judgment against it in favor of the laborers and materialmen is erroneous because the bond was not payable to nor did it inure to their benefit. We sustain this contention. Bonds conditioned almost exactly as the one in controversy here have been before our courts a number of times and all that can be has been written thereon by our courts. The established rule in Texas seems to be that a bond as the one here being payable only to a private individual does not inure to the benefit of subcontractors, materialmen, or laborers who supply materials for or work on the building. National Bank of Cleburne v. G., C. & S. F. Ry. Co., 95 Tex. 176, 66 S. W. 203; Gen'l Bonding & Casualty Ins. Co. v. Waples Lbr. Co. (Tex. Civ. App.) 176 S. W. 651; Oak Cliff Lbr. Co. v. American Indemnity Co. (Tex. Civ. App.) 266 S. W. 429; Murphy v. Huey & Philp Hdw. Co. (Tex. Civ. App.) 267 S. W. 338; Garrett v. McAdams Lbr. Co. (Tex. Civ. App.) 163 S. W. 320; Foust v. Bibb (Tex. Civ. App.) 258 S. W. 921, reversed on other grounds (Com. App.) 272 S. W. 445; Scharbauer v. Lampasas County (Tex. Civ. App.) 214 S. W. 468, 480, par. 2; National Surety Co. v. Brown-Graves Co. (C. C. A.) 7 F.(2d) 91; Maryland Cas. Co. v. Johnson (D. C.) 15 F. (2d) 253.

A different rule exists in some other jurisdictions, and in this state a different rule prevails where the bond is made in connection with public works where no liens can be fixed.

■ Appellees, by their pleadings and evidence, attempted to show that all of the parties at interest interpreted the bond in controversy to protect materialmen, laborers, and subcontractors, and further that there was a mistake made in drawing the bond. The bond is, we think, plain and unambiguous, and the parties could not resort to parol evidence to vary its terms in the absence of any allegation or proof that same was signed through fraud, accident, or mistake. Reagan v. Bruff, 49 Tex. Civ. App. 226, 108 S. W. 185; Moore v. Studebaker Bros. Mfg. Co. (Tex. Civ. App.) 136 S. W. 570; Lane v. Urbahn (Tex. Civ. App.) 265 S. W. 1063; Taylor Cotton Oil Company v. Early-Foster Co. (Tex. Civ. App.) 204 S. W. 1179. The evidence shows without controversy that the contents of the bond were not in any way discussed by either Ellison or the bonding company. No contention is made that the bonding company intended to write anything else into the bond than that which was written therein. The mere fact that the contractors as well as some of the subcontractors and materialmen who read the bond interpreted it as protecting the subcontractors, materialmen, and laborers would not change the plain unambiguous language used therein.

■ Appellees, by cross-assignments of error, contend that the trial court erroneously

refused to enter judgment in favor of T. B. Ellison, the owner, as trustee, against appellant for their use and benefit for the amount of their respective claims. This question, we think, was correctly and adversely decided against appellees' contention in Gen'l Bonding & Cas. Co. v. Waples Lbr. Co. (Tex. Civ. App.) 176 S. W. 651.

Under our statutes appellees, by having complied therewith, could have fixed liens against the property of T. B. Ellison for the material furnished and labor performed, which Ellison could have required the bonding company to pay under and by virtue of the provisions of the bond. Since, however, no liens were fixed and Ellison was not personally obligated to any of the parties at interest for the material furnished or labor performed, he could not either in his individual right or as trustee recover judgment against appellant on said bond for the amount of unpaid claims.

■ Appellant assigns error to the action of the trial court in rendering judgment against it in favor of T. B. Ellison for $750 attorney's fees, its contention being that since no judgment was rendered against Ellison and no lien was perfected against his property, it was not liable under the terms of the bond for any attorney's fees. It further contends that since it appears from the record that Ellison was in this litigation seeking through his attorneys to recover for the benefit of the materialmen and laborers, that he was not entitled to any attorney's fees. The bond is conditioned that "if the principal shall faithfully perform the contract on his part and satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the owner from all costs and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expenses which the owner may incur in making good any such default." There is no specific agreement that the principal would pay attorney's fees. The only obligation is that he would repay the owner all expenses which he incurred in making good any default. There is no suggestion in the answer and cross-action of T. B. Ellison that he called upon or requested appellant to defend the action which had been brought against him. Appellant did, however, in its answer specifically allege that Ellison was not liable in any way to any of the parties and that no one of the parties was entitled to a lien against his property. 31 C. J. 436, states:

"As a general rule, an indemnitee is entitled to recover as part of the damages, reasonable attorney's fees * * * which he is compelled to pay as a result of suits by or against him in reference to the matter against which he is indemnified, provided that under all the circumstances of the case he acts in good faith and with due diligence. This rule is especially applicable where the indemnitor is notified and given an opportunity to contest the adverse litigation but fails or refuses to do so."

In his cross-action Ellison, as trustee, asked for affirmative relief against appellant for the use and benefit of the materialmen and laborers who had filed their claims in this proceeding, and thereby took a hostile position against the appellant. In addition to the above, article 25 of the contract, attached to the bond and made a part thereof, specifically provides that "the making and acceptance of the final payment shall constitute a waiver of all claims by the owner (with certain exceptions, none of which apply in this case);" and subdivision "O" of article 37 of said contract provides that the owner (Ellison) is not in any way obligated to pay or to see to the payment of any sums to any subcontractors. The record shows without dispute that long prior to the time this suit was instituted Ellison had made the final payment to the contractors and had accepted the building, and under and by virtue of article 25 of the agreement above quoted, he thereby waived any claims he might have had against the contractors or against appellant as surety on said bond. Kelsay Lumber Co. v. Rotsky (Tex. Civ. App.) 178 S. W. 837, modified (Com. App.) 228 S. W. 558. Under the specific terms of the contract, before Ellison, the owner, made the final payment to the contractors, they were required to submit satisfactory evidence that all pay rolls, material bills, and other indebtedness had been paid. Appellant as surety on the bond could not require Ellison to comply with said portion of the contract. Neither could it prevent Ellison from making the final payment without demanding said evidence of the payment of all of said bills and indebtedness. Ellison as owner having specifically agreed that if he did make the final payment and accept the building, that he would thereby waive any further claim against the contractor, as a matter of law, by making the final payment and accepting the building released the surety on said bond. Under all of the facts and circumstances as revealed by the record in this case, we do not think the bonding company is liable for said attorney's fees.

All parties at interest having agreed in the trial court that T. B. Ellison (the owner) was not liable personally for any of the debts sued for and that none of them had any right to a lien on the property in controversy, and it appearing from the plain and unambiguous terms of the written bond that appellant is not liable to any of the materialmen, subcontractors, or laborers, and it appearing that the evidence has been fully developed, the judgment of the trial court is reversed, and judgment is here rendered that appellees take nothing as against appellant.