Groce **LALLIER** et al., Appellants,

v.

**E. F. MUELLER,** Appellee.

No. 13079.

Court of Civil Appeals of Texas.

Galveston.

March 14, 1957.

Rehearing Denied April 4, 1957.

Paul Strong, Houston, for appellant.

Dow & Dow and Harry Dow and Melvin A. Dow, Houston, for appellee.

HAMBLEN, Chief Justice.

This case involves the construction of a written contract, a copy of which, marked Exhibit A, we attach hereto as a part of this opinion.

The factual background of this litigation, in so far as material to this appeal, is as follows: in February of 1947 appellee Mueller and Webb Mading entered into a contract in writing for the formation of a corporation known as Modern Fixtures, Inc., to engage in the office fixture business. This agreement provided that $25,000 capital would all be put up by Mading, $12,-750 in his own behalf for 127½ shares representing 51% of the total and $12,250 as an advancement to appellee for the latter's 122½ shares representing 49% of the total. This sum of $12,250 so advanced by Mading together with interest, and except for $4,000.00 to be raised from the sale of appellee's home, was to be repaid Mading within five years but only out of dividends on appellee's 49% of the stock, it being expressly provided that appellee should have

no personal liability for such repayment and that he should devote his entire time to the business for a period of five years at a salary of $300 per month and the use of a five-room home in which to live at a nominal rental. The contract provided that appellee's 49% of the stock of the company should be held by Maurice Epstein as trustee until the $12,500 advanced by Mading had been repaid.

The corporation did not do well. Mading advanced an additional $7,500. Total dividends amounted to $250. At the end of four years appellee made known to a joint meeting of stockholders and directors that there was no prospect of the company's making enough money to repay Mading's advances under the February 6, 1947 agreement; that he, appellee, was unwilling to continue the responsibility of operating the company, and recommended its dissolution. At this meeting it was decided to begin winding up the company's affairs, with formal dissolution to be at a later date. At a later meeting held on September 11, 1951, the contract evidenced by Exhibit A was entered into.

Mading died on February 28, 1953, and the appellants, who were defendants in the trial court, are the executors and trustees under his will. Appellee filed this suit on December 29, 1954. In his pleadings he bases his cause of action upon allegations that appellants as executors, etc., in violation of the terms of the contract of September 11, 1951 (Exhibit A), failed to sell the property received by Mading under the terms thereof within the three year period provided, failed and refused to make any bona fide effort to sell such property, and rejected appellee's offer to purchase the property at the value listed in the inventory of Mading's estate. He alleged that by sale of personalty owned by the corporation Mading had received the sum of $18,-428.32, leaving a balance owing Mading of $12,312.83, which sum is alleged to represent the amount necessary to reimburse Mading or his estate for his capital investment and all advances made by him. He further alleged that the remaining properties of the corporation received by Mading upon the dissolution thereof were of sufficient value "to cover the above balance of $12,312.83 owing to Mading, plus the $2,500 capital investment of plaintiff and to leave an excess of approximately $10,000 to be divided 49% to plaintiff and 51% to Webb Mading * * *." In so far as his cause of action above outlined is concerned appellee by his pleading reaffirms the contract of September 11, 1951, and alleges a breach thereof by appellants. In addition to the foregoing cause of action, appellee alleged that after dissolution of the corporation he entered the store fixture business in his own behalf and rented from Mading certain property which Mading had received from dissolution of the corporation. He alleges: "The agreement under which this property was rented by the Plaintiff was that 49% of the rental, after adjustment of the capital investment of Plaintiff and Webb Mading, as provided in the Contract of September 11, 1951, would be the property of Plaintiff and would be paid to him." He asserts a cause of action based upon breach of such rental agreement by appellants, the breach consisting of their failure to pay him 49% of the rentals paid under such agreement.

Appellee in his pleading acknowledges an indebtedness of $1,357.61 owing by him to Mading. His petition concludes with the following prayer:

"Wherefore Premises Considered, Plaintiff prays that the Defendants be cited to appear herein as required by law; that upon final hearing hereof, after allowing a set-off in the amount of $1,357.61 plus interest at 3% from April 26, 1952, owing to the said Webb Mading by Plaintiff, Plaintiff have judgment for $2,500.00, representing his capital investment, plus 49% of the excess of the highest fair market value of the Disson Heights property between September 11, 1954 (this being the date of the breach of contract) and the date of judgment, over $14,812.83 which sum represents the $2,500.00 capital investment of Plain-

tiff and the balance of $12,312.83 owing to Webb Mading, deceased, for his capital contribution as explained in paragraph V above, plus 49% of the total net rental after deductions for expenses of taxes and insurance paid by Plaintiff for the use of the Disson Heights property since February 1953, plus, interest thereon at 6% from time of judgment, and for such other relief, general and special, in law and in equity, to which Plaintiff may be justly entitled; in the alternative, Plaintiff prays that it shall be adjudged and decreed that he is the owner of an undivided interest at 49% of the Disson Heights property and that such property is subject to a charge in favor of the Estate of Webb Mading, deceased, in the amount of $12,312.83 and is also subject to a charge in favor of Plaintiff in the amount of $2,500.00 less the set-off of $1,357.61 plus interest as specified above, and for such other relief, general and special, in law and in equity, to which Plaintiff may be justly entitled."

It is sufficient to state that appellants joined issue on every material allegation made by appellee, and additionally by cross-action sought recovery of $1,357.61 indebtedness, which appellee had acknowledged.

In direct opposition to the theory upon which appellee alleged his cause of action and despite the complete lack of pleading of any ambiguity in the contract of September 11, 1951, the case appears to have been tried upon the theory that such contract was ambiguous or, as appellee asserts in his brief, does not represent the complete agreement between appellee and Mading. Trial was to a jury. At the conclusion of the evidence the trial court refused appellants' motion for an instructed verdict and submitted special issues of fact to the jury, which together with the verdict of the jury we quote as follows:

### Special Issue No. 1

"Do you find from a preponderance of the evidence that on September 11, 1951, at the time of the signing of the contract by E. F. Mueller and Webb Mading of date September 11, 1951, it was the intention of both E. F. Mueller and Webb Mading that the Disson Heights property would be sold by Webb Mading within a period of three years beginning September 11, 1951?"

Special Issue No. 1 was answered: "We do."

### Special Issue No. 2

"Do you find from a preponderance of the evidence that it was the intention of E. F. Mueller and of Webb Mading at the time of the signing of the contract of date September 11, 1951, by E. F. Mueller and Webb Mading, that in the event the Disson Heights property was not sold by Webb Mading within three years that if the property be sold after the expiration of three years that the proceeds thereof would be distributed by Webb Mading or his executors or trustees according to the provisions of the contract of date September 11, 1951?"

Special Issue No. 2 was answered: "We do."

### Special Issue No. 3

"Do you find from a preponderance of the evidence that it was the intention of both E. F. Mueller and Webb Mading when E. F. Mueller rented the Disson Heights property in January of 1953 that E. F. Mueller would get 49% of the net rentals paid by him for the rent of the Disson Heights property from and after January, 1953?"

Special Issue No. 3 was answered: "We do."

### Special Issue No. 4

"Do you find from a preponderance of the evidence that it was the intention of both E. F. Mueller and Webb Mading to allow as a credit against Webb Mading's total investment in Modern Fixtures, Inc. the full amount of $12,428.32 received by him on the closing of the corporation bank

account in the liquidation of the corporation?"

Special Issue No. 4 was answered: "We do."

### Special Issue No. 5

"Do you find from a preponderance of the evidence that Webb Mading acquired ownership of all the stock of Modern Fixtures Inc. on September 11, 1951?"

Special Issue No. 5 was answered: "We do not."

Appellants' motion for judgment non obstante veredicto was overruled except to the extent that the court granted the motion to disregard the findings of the jury in response to Special Issues Nos. 3 and 4. Judgment was entered, as follows:

"It Is Therefore, Ordered, Adjudged, and Decreed by the Court that Lots 1, 2, 22, 23, 24 and 25, Disson Heights Addition, Houston, Harris County, Texas, be and the same are hereby made and declared to be subject to the following charges to-wit: (1) a first and prior charge in favor of defendants as Executors of the Estate of Webb Mading, Deceased, and Trustees of the Webb and Cora Mading Foundation in the amount of $14,566.14, plus interest at the rate of 5% per annum on the sum of $9,750.00 from February 4, 1947 until paid, and (2) a second and subordinate charge in favor of Plaintiff, E. F. Mueller, in the amount of $2,500.00, and that subject to such charges all right, title and interest in and to said Lots are and are hereby declared to be owned as follows:

"An undivided 49% interest thereof by Plaintiff, E. F. Mueller; and An undivided 51% interest thereof by Defendants as Executors of the Estate of Webb Mading, Deceased, and as Trustees of the Webb and Cora Mading Foundation.

"It is further Ordered, Adjudged and Decreed that Defendants and Cross-Plaintiffs as Executors of the Estate of Webb Mading, Deceased, and Trustees of the Webb and Cora Mading Foundation, do

have and recover of and from E. F. Mueller, Plaintiff, and Cross-Defendant, the amount of $1,357.61. with interest at the rate of 3% per annum from April 26, 1952 until date of judgment and 6% per annum from date of judgment until paid, for all of which let execution issue."

Appellants present ten points of error, the first of which is as follows:

■ "This case should be reversed because there was no sale of the property received by Mading as a liquidation distribution, within three years for a sum in excess of $28,500.00, plus interest, which were conditions precedent to liability under the written agreement of September 11, 1951, sued on * * *."

We think the point is well taken and should be sustained. Completely aside from the lack of pleadings to raise the fact issue submitted to the jury, and to support the judgment rendered in part upon the jury verdict responsive thereto, we think the judgment must be reversed because the contract alleged upon is clear and unambiguous and by its express terms completely establishes the rights of the parties thereto. It is construable as a matter of law. As we construe it the contract establishes beneficial ownership by Mading of all stock in, and of certain indebtedness of, the corporation to be dissolved. It further establishes Mading's right to all corporation assets and properties, including cash, after dissolution. Under familiar equitable principles, the provision for delivery, transfer, and conveyance of such assets to Mading invests him with the equitable title thereto. Appellee's only right arises under paragraph (4) of the contract. That right is expressly conditioned upon the happening of a certain event. The condition imposes no obligation upon Mading to effect the occurrence of such event, but on the contrary paragraph (5) expressly negatives any such obligation.

The parties stipulated that no sale of the property had been effected within the three

year period provided for in paragraph (4) of the contract. Appellee's cause of action, if any, must therefore rest upon his allegation that Mading and appellants refused bona fide offers of amounts sufficient to entitle appellee to some amount under the terms of paragraph (4) of the contract. Without passing upon the sufficiency of the allegations in that regard, we state that the evidence fails to support the allegations. The only offers made by appellee were shown to comprehend the purchase of properties owned by Mading over and above those received upon dissolution of the corporation. Appellee requested the submission of no issue of fact relative to any lack of good faith on the part of appellants. On this appeal he presents neither counter-point nor argument in support of that theory of his lawsuit.

■ In this Court's view, this case falls squarely within the rule announced by the Supreme Court of Texas in the case of Ferguson v. Mansfield, 114 Tex. 112, 263 S.W. 894, 900, wherein it is said, "It is quite elementary that an instrument payable upon a condition which does not import an absolute liability is not payable until that condition has happened."

The same rule is set forth in the earlier case of Salinas v. Wright, 11 Tex. 572, in the following language: "And it is perfectly well settled that such an acknowledgment, if accompanied with a promise to pay conditionally, is of no avail, unless the condition is complied with, or the event happens, upon which the promise depends." While we deem citation of further authority unnecessary, see also Rowlett v. Lane, 43 Tex. 274; Carlisle v. Hooks, 58 Tex. 420; Harris v. Wheeler, Tex.Com.App., 267 S.W. 465; Southern Mortgage Company v. McGregor, Tex.Com.App., 286 S.W. 1086; Norton v. W. L. McAtee & Sons, Tex. Com.App., 16 S.W.2d 517; Gulf Pipe Line Company v. Nearen, 135 Tex. 50, 138 S.W. 2d 1065; Great Western Oil Co. v. Carpenter, 43 Tex.Civ.App. 229, 95 S.W. 57 (writ refused); Benny v. Bell, Tex.Civ.

App., 291 S.W.2d 369; and Reagan v. Bruff, 49 Tex.Civ.App. 226, 108 S.W. 185.

As previously stated, this case was not tried upon the theory alleged upon, namely, breach of contract, but rather, as clearly reflected by the issues submitted to the jury, upon the theory that the contract is ambiguous. With no lack of respect for counsel for appellee, we confess difficulty in understanding the rationale of such theory. We are completely unable to see any legal validity in it. Upon this appeal appellee's theory of ambiguity is made alternative to one by which he asserts that the judgment is correct under the proper legal construction of the contract as written. His first counter-point in reply to appellants' Point of Error No. 1 is as follows:

"Since the September 11, 1951 contract was written to confirm the 'respective rights' of the parties already vested and in existence at the time, there was, as a matter of law, an obligation on Mading to pay over a proper share of the corporation assets to Mueller after a reasonable period even if no sale were made: therefore the jury's answers to special issues No. 1 and No. 2 were not only justified but were required, and a directed verdict for Mueller would have been proper."

He relies upon a rule stated in 148 A.L.R. at page 1077, as follows:

"While there are a few cases to the contrary, it has been generally held that where the payment of a debt arising out of a prior contract or arrangement is, by a subsequent agreement or instrument executed by the debtor, postponed or made payable upon the happening of some specific contingency wholly or partially within the control of the debtor-promisor, the debt becomes payable within a reasonable time after the execution of such subsequent agreement, even though the contingent event has not occurred."

Factually, this case does not fall within the quoted rule of law. Here there existed no prior debtor-creditor relationship be-

tween Mading and appellee. This contract does not purport to postpone the payment of a debt or to make a debt payable upon the happening of some condition, for the reason that there is no debt involved. The contract negatives that relationship. The rule relied upon is not applicable, and none of the authorities cited are in any degree apposite.

Appellee's theory of ambiguity presented in counter-point No. 4 rests upon the assertion that the contract sued upon is incomplete in that it fails to expressly set forth the rights of the parties in the event that no sale of the corporate assets received by Mading is effected within the three year period. As previously pointed out, the contract vests the equitable title to all corporate assets in Mading. Appellee's rights are clearly and distinctly established by paragraph (4) of the contract. The concluding words of the contract are: " * * except as hereinabove set out, neither of the parties hereto have any claim of any kind whatsoever against Modern Fixtures, Inc., or against each other." The words employed evidence the intention that unless the condition provided for occurs, appellee has no rights whatsoever, and Mading owns all assets of the corporation unconditionally. We have difficulty devising a clearer expression of that intent.

Appellants' remaining nine points of error are directed at asserted procedural errors, which become immaterial in view of our holding that their first point of error must be sustained.

By his sixth counter-point, which should properly be designated as a cross-point, appellee complains of the action of the trial court in granting appellants' motion to disregard the verdict of the jury responsive to Special Issue No. 3. He seeks reformation of the judgment to conform to the verdict. We overrule the point.

The only evidence relating to this issue is the testimony of a bookkeeper employee of Mading, who testified in substance that in January or February of 1953 Mading called him into his office and told him that appellee was always complaining that he could not save any money, and that by having him pay rent he would thereby be forcing appellee to save some money. Appellee contends that this evidence is probative of an agreement by Mading that appellee was to receive 49% of any rent paid. In our opinion, this testimony proves nothing at all. When appellee's pleading referable to his claim for rent is examined, it is apparent that he alleges his right thereto subject to the terms of the contract of September 11, 1951, and therefore subject to the condition set forth in that contract, namely, the sale of the property within the three year period. Our construction of that contract, as previously stated, destroys any claim of appellee to any rents paid, under his own pleading. Aside, however, from that consideration, appellee's contention as to the probative effect of the bookkeeper's testimony is completely destroyed by evidence consisting of a letter from him to the appellants dated January 31, 1954, wherein he offers to buy certain properties. Pertinent to our discussion is the following paragraph from such letter:

"Now, inasmuch as we have been paying rent while this property has been in the process of liquidating, we would like to have the rent we have paid in 1953 and other rent we may pay up to the time of the consummation of this agreement applied to the purchase price, less, of course, taxes and insurance, and any other expenses on this property. In case we cannot secure the money to make the purchase, any such rent will remain the property of the estate, of course."

It is our opinion that there is no evidence in the record supporting the submission of Special Issue No. 3, and that the finding of the jury in response thereto was properly disregarded.

The judgment in favor of appellants, as set up in their cross-action for the sum of $1,357.61 with interest, is not appealed from. In so far as appealed from, we con-

clude that the judgment of the trial court must be reversed and here rendered that appellee take nothing.

Reversed and rendered.

Exhibit A

"The State of Texas

"County of Harris

"Whereas, E. F. Mueller and Webb Mading, both of Harris County, Texas, having agreed to dissolve and fully liquidate the affairs of Modern Fixtures, Inc., and

"Whereas, E. F. Mueller is the owner of record, and Webb Mading is the beneficial owner as hereinafter set forth, of all of the capital stock of Modern Fixtures, Inc., and

"Whereas, the said Webb Mading and E. F. Mueller are desirous of confirming the respective rights of each in said corporation and as to each other,

"Now, Therefore, it is agreed as follows:·

"(1) Webb Mading is the beneficial owner of 51% of the capital stock of Modern Fixtures, Inc., standing on the books of the company in the names of S. U. Brown and W. J. Price, and the beneficial owner also of the remaining 49% of said capital stock standing in the name of E. F. Mueller, said latter interest having been acquired by the said Mading by reason of the default on the part of the said E. F. Mueller to pay an indebtedness to the said Webb Mading of Nine Thousand Seven Hundred and Fifty ($9,750.00) Dollars with interest at 5% from November 11, 1950, and by virtue of a certain written contract dated February 6, 1947.

"(2) Webb Mading is also a creditor of Modern Fixtures, Inc., in the sum of Six Thousand ($6,000.00) Dollars, being the balance owing on a certain company note originally for the principal sum of Seven Thousand Five Hundred ($7,500.00) Dollars, dated May 1, 1947, with interest at 5% from November 16, 1950.

"(3) After all debts and obligations of the company have been paid and satisfied, Webb Mading is entitled to receive as a liquidating distribution in full, final and complete liquidation of the company, all of the remaining assets of the company, and all such assets and properties including cash, if any, shall be delivered, transferred and conveyed to him by the company by proper instruments of transfer and conveyance.

"(4) The assets of the company available for distribution consist principally of land and improvements, machinery, equipment and inventory. Should Webb Mading dispose of said properties received by him as a liquidating distribution, or any of them at any time within three years from this date, and realize in the aggregate a net amount in excess of Twenty Eight Thousand Five Hundred ($28,500.00) Dollars in addition to interest on the sum of Nine Thousand Seven Hundred and Fifty ($9,750.00) Dollars at 5% from February 6, 1947, and interest on the sum of Six Thousand ($6,000.00) Dollars at 5% from November 16, 1950, E. F. Mueller shall be entitled, and Webb Mading agrees to pay, but only out of such excess, if any, the amount thereof up to Two Thousand Five Hundred ($2,500.00) Dollars; and after such payment, should there remain any further excess, E. F. Mueller shall be entitled to 49% of such excess.

"(5) This agreement shall in no manner affect the right of Webb Mading to sell and dispose of said property when and as he sees fit and on such terms and for such considerations as he may deem advisable. Webb Mading agrees, however, promptly on effecting any sale to report to E. F. Mueller the net amount of the consideration at which such property may have been sold, it being distinctly understood that Webb Mading assumes no personal obligation to E. F. Mueller to make any payment except out of such excess, if any, after Webb Mading has received in full the principal sum of Twenty Eight Thousand Five Hundred ($28,500.00) Dollars with interest and under the conditions as hereinabove provided.

"It is further agreed that except as hereinabove set out, neither of the parties hereto have any claims of any kind whatsoever against Modern Fixtures, Inc., or against each other.

"Executed in duplicate this 11th day of September, 1951.

"/s/ E. F. Mueller
"/s/ Webb Mading"