Camilla McCORD, Executrix of the Estate of Perry B. McCord, Deceased, Appellant,

v.

**FORT WORTH NATIONAL BANK,** Independent Executor, Appellee.

No. 15583.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 4, 1955.

Rehearing Denied March 4, 1955.

David C. McCord, and Robert Lee Guthrie, Dallas, for appellant.

Donald C. Bubar, Melvin F. Adler, Fort Worth, for appellee.

MASSEY, Chief Justice.

From a judgment in behalf of the defendant in a suit filed by a plaintiff on December 2, 1952, for accounting and debt, the plaintiff brings an appeal. The defendant plead the statutes of limitation as part of the defense.

Judgment affirmed.

In the instant case the actual parties between whom the controversy arose have both died. The deceased, Perry B. McCord, was the employee of Joe Cauker, also now deceased, and that part of the controversy between these persons which is material to this appeal is the claim of the employee McCord against the employer Cauker for an accounting of earnings and an adjudication of indebtedness owing him pursuant to his employment. For convenience we will here consider them by name.

For a period of several years prior to January 1, 1947, the parties' arrangement was by an oral contract wherein McCord's compensation was controlled by the profits Cauker realized from the operation of his construction business. The calculation on such profits was made on bookkeeping records kept under a system of accounting which we will here call the "accrual basis". In so far as the books were concerned, they might at times show compensation due McCord because of construction work done and charged out, where had the books been kept on a "cash basis" McCord would not have been entitled to such compensation until there had been a collection of the bills charged out for such work. In other words, under the system of accounting in effect McCord was given compensation measured by Cauker's "accounts receivable" as well as by his "accounts received".

Additionally, McCord was paid a salary. Cauker was also paid a salary. There is a question posed upon the appeal relating to whether under the agreement such salaries, or either of them, should have been considered as mere advancements upon the annual compensation due to McCord, or whether after the deduction of them, or either of them, the calculation should have been upon the remainder. Of course, there was a character of calculation made of which McCord makes complaint. However, if the statutes of limitation plead by Cauker operate to defeat McCord's claim, as we have concluded that they do, then a construction of the contract upon the calculation matter becomes immaterial, for if McCord could not maintain his suit for compensation at all, no system of calculation would affect the result.

The contract in writing entered into between McCord and Cauker on January 1, 1947, was entitled "Working Agreement", and contained, among others, the following provisions:

"Joe Cauker is to pay Perry B. McCord, for his services, twenty-five (25%) per cent of any profit that may be realized from the said construction business, after all the expense of operating this business has been paid. * * *

" * * * Any major equipment shall be purchased and solely owned by Joe Cauker, but since Perry B. McCord is to share in the income from the use of this major equipment, its maintainance, repair, operating expense, and its depreciation shall be a business expense.

" * * * In the event of the termination of this agreement, Joe Cauker is to have ninety (90) days from the date of such

termination to determine and pay to Perry B. McCord his portion of any profit.

"The sharing of profit shall end on the date of the termination of this agreement.

"The terms of this written agreement set forth the conditions of an oral agreement covering operation of this construction business, for the time from April 1st, 1944 through December 31st, 1945, except the distribution of profit, which for that time was twenty (20%) per cent to Perry B. McCord, and eighty (80%) per cent to Joe Cauker.

"This agreement as it is written sets forth the conditions of an oral agreement covering the operation of this construction business, for the time from January 1st, 1946, through December 31st, 1946."

■ We believe that it is important to have an understanding of just what relationship resulted between Cauker and McCord when McCord's employment contract contemplated that he was to be paid compensation based in part, if not in whole, upon the profits realized from Cauker's operation of a construction business. Under McCord's theory his interest in the profits would be in common with Cauker's interest therein, as in the case of partners or joint adventurers. But in our opinion the contract is unambiguous in the respect here material, irrespective of any question as to its ambiguity in other particulars, and it seems clear to us that McCord was neither made a partner of Cauker nor a joint adventurer with him under this contract.

In considering rights and liabilities under the contract of the parties, there would be no distinction in the tests to be applied in a determination of whether the transaction was one of joint venture or partnership or should be of a differing nature. 48 C.J.S., § 1, p. 808; Strack v. Strong, 1938, Tex.Civ.App., San Antonio, 114 S.W.2d 313, writ dismissed. To our view, under this contract the ownership, or seizure, of the profits of the construction business as they accrued was not common because

McCord did not have the right to dispose of any interest therein as an owner of an interest. He did not have the right to share in the profits of Cauker as a principal. Therefore, under the established rules of law in Texas he would be neither a partner nor a joint adventurer. Freeman v. Huttig Sash & Door Co., 1913, 105 Tex. 560, 153 S.W. 122, Ann.Cas.1916E, 446; Fink v. Brown, 1919, Tex.Com.App., 215 S.W. 846. We believe that McCord had only a contractual right to have his compensation based upon a computation of the profits and, as thus computed, paid over to him when it was earned, and his interest in such profits was common to Cauker's only because the profits were to serve as a measure of the compensation he would receive for his services. See the many cases and texts cited under Le Bus v. Le Bus, 1954, Tex.Civ.App., Fort Worth, 269 S.W.2d 506, 511. See "Tests of Partnership", 68 C.J.S., Partnership, § 20, p. 432 et seq.

Therefore, what might be termed McCord's interest in the profits could not be the subject of a trust for his benefit in the hands of Cauker. No part of the profits would be property of McCord held by Cauker as his agent. But such profits would merely constitute a yardstick or measure whereby the amount of compensation due him from Cauker would be computed. So, if indeed Cauker did not pay McCord all that he should have paid him under the contract, McCord's claim against him would be a personal claim, identical to a claim for simple debt founded on written contract. Of course, in so far as the suit might be considered as one for specific performance of a contract in writing, the four-year statute of limitation would seemingly apply, but since over four years passed since McCord's right to bring suit accrued, without his suit having been brought, our consideration will be of the liability of Cauker under the statutes of limitation as otherwise considered. As previously noted, both the two-year and four-year statutes were pleaded.

On the date of June 25, 1947, the relationship we hold to have been created

continued to exist between the parties, and the "accounts receivable" of Joe Cauker's business then amounted to $71,024.80. Twenty-five (25%) per cent of this figure is $17,756.20. Also, as of this approximate time McCord had drawn from the "accounts receivable" part of the business capital, as a part of his compensation for the year, approximately $9,656.55. Assuming this amount as exactly correct and assuming that McCord was entitled to compensation of exactly one-fourth, it may readily be ascertained that in a conversion of the bookkeeping records from the "accrual basis" to the "cash basis", McCord would have overdrawn the amount of $8,099.65. Of course, it might be said that McCord was entitled to the total amount of $17,756.-20 by his collection of compensation equal to twenty-five (25%) per cent of each item in the accounts receivable as they were paid, had there been such a change-over in the bookkeeping and accounting system. But whether, in such a hypothecated instance, McCord would have been so entitled we are not required to decide in view of our opinion that limitations foreclose McCord's claim. Neither do we need to decide the proper calculation of his compensation.

On such date, June 25, 1947, apparently with full information on the part of parties, and with the consent of both, it was decided to incorporate Joe Cauker's business. The Corporation was denominated Joe Cauker, Contractor, Incorporated. Cauker took the entire amount of the accounts receivable, $71,024.80, and transferred the item, along with the authority to collect and retain the same, to the new corporation. McCord received no stock at all and owned no interest in the corporation. At the same time a contract was entered into between McCord and the new Corporation.

Under the provisions of the new contract McCord entered into a full time employment with the new Corporation. The provisions of the new contract are not material here, except to note that pursuant to McCord's entry into its employment his contract with Cauker of January 1, 1947, was brought to his end, either by agreement with and consent of Cauker or by a breach on his own part.

■ For our purposes we can disregard the fact that there is a dispute upon the merits of the case in connection with whether McCord should be held to have actually collected all, or at least part, of what Cauker owed him based upon the "accounts receivable", by virtue of his new contract with the Corporation, and contrarily we assume that he received nothing. Likewise, we can disregard the fact that there is a dispute upon the merits of the case in connection with the question of whether McCord should be held to have actually collected the compensation he rightfully should have been paid under a proper construction of the contract of January 1, 1947 (with a correct computation of his compensation made under that construction), and contrarily, we will assume that he was not so properly paid. The reason for our treatment of the parties' disputes in these respects is to test the applicability and operation of the statutes of limitation. The original petition of the plaintiff which advanced the cause of action was filed on December 2, 1952, over five (5) years and five (5) months subsequent to the date McCord entered into the contract with the Corporation, simultaneously ending his contract with Cauker.

Though the relationship of the parties as individuals ended on June 25, 1947, it would be ninety (90) days from that date that McCord's cause of action first accrued. This date would be over five (5) years prior to that on which McCord's suit was filed. The same thing would apply both to McCord's claim for additional compensation because of the contention that he was underpaid through an improper calculation prior to June 25, 1947, and to his claim as founded upon the contention that Cauker owed him one-fourth of the amount of the "accounts receivable" delivered over to the Corporation at that time.

■ It being apparent that limitation would operate to defeat McCord's cause

of action absent the overcoming of the presumptions against him, he was faced with the problem of proving that the statutes were tolled and that he should not be held to have "slept on his rights" for an excessive length of time. In order to do this, it was incumbent upon McCord to prove either fraud on Cauker's part, mutual mistake on both his own and Cauker's part, mistake on his part due to Cauker's fault, or mistake on his own part as to material facts undisclosed to him and upon which he acted—with knowledge on the part of Cauker that in the performance of the acts he was laboring under such mistake. This would be true because such would be necessary of proof by him in order that he could avoid the conseqeunces of his acts pursuant to the transaction between them. Restatement of the Law, Contracts, Sections 502 and 503. And it would necessarily follow, in a test of the applicability of any statute of limitation, that McCord prove in addition thereto that he did not discover the fact of fraud or mistake, nor could have done so in the exercise of reasonable diligence, until such a date as would demonstrate that the time the suit was instituted should be held to have fallen within the limitation period. Evans v. Renfroe, 1943, Tex.Civ.App., Austin, 170 S.W.2d 636, error refused, w.m.

██ McCord assigned as his reason why he had no notice of the true state of affairs until the spring of 1951 the fact that he was "not versed in bookkeeping and accounting as the deceased (Cauker) well knew". He alleged that he frequently made demand on Cauker for a settlement of accounts but failed to obtain same. His claim is that his failure to acquaint himself with actual notice was ignorance of bookkeeping, not ignorance that the construction of the contract by Cauker was different from his own and not ignorance of the fact that the calculation of his compensation was different from the calculation both he and Cauker intended when the contract was made, though his ignorance in the latter instances is implied. His allegation that he made frequent demand for a settle-

ment of accounts is contrary to Cauker's position, as reflected from the defendant's pleadings and evidence, that there had been such a settlement as of June 25, 1947, or at least within ninety (90) days thereafter.

From an examination of the evidence we find no proof that within even a four year period subsequent to June 25, 1947, or ninety (90) days thereafter, McCord ever made a claim to Cauker that there had not been a settlement of accounts with him, or ever claimed anything in addition to what he received as a payment thereon. Of course, if both he and Cauker understood that he would be paid on a basis different from the basis on which he was actually being paid according to Cauker's bookkeeping, or if he actually believed he was being paid on a basis that Cauker knew was different from the basis upon which he believed and expected his compensation to be computed, which would be a material undisclosed fact upon which he mistakenly acted with Cauker's knowledge, the running of any statute of limitation would be tolled until he should be considered to have had actual or constructive notice.

There is no evidence of any fraud on Cauker's part, either in the contract's inception or at any time thereafter. There is no evidence that the construction Cauker made of the contract would have occasioned a calculation different from the calculation that was actually made. There is no evidence that McCord was mislead due to Cauker's fault. Neither is there any evidence that Cauker knew that the basis on which McCord's compensation was calculated was different from the calculation McCord understood would be followed. As to the question of whether both Cauker and McCord were actuated by a mutual mistake as to the proper manner of the calculation of McCord's compensation, even when we assume that it was proven that McCord was actually mistaken as to the manner of calculation, the record is wholly absent of any proof that Cauker was guilty of the same mistake. Indeed, the contrary appears, and under the evidence Cauker paid McCord compensation upon the basis of calculation that he believed he had agreed upon. Like-

wise, it is apparent that McCord either knew or should have known that the "accounts receivable" were transferred by Cauker to the Corporation in 1947.

Although it is true that in April or May of 1951, Cauker, in a conversation with McCord—during the course of which McCord obviously advanced the contention that some additional compensation was due him —told McCord to send out an auditor to examine the books. This followed a statement made to him by McCord that he (McCord) was willing to take Cauker's statement that he had been paid what was proper. The most strained construction of this event would be that Cauker, despite his conviction that he had made proper payment of compensation to McCord, was nevertheless willing for McCord to try to convince him otherwise. Certainly it could not be construed as an admission by Cauker that he had labored under any mistake whatever, or that he had paid McCord compensation on an erroneous calculation.

As we have previously noted, McCord's right to further compensation was not a right to profits of Cauker's business operations as profits, but the profits served only as a "yardstick" by which McCord's compensation was to be measured. Hence we do not have trust questions involved as would be the case had the parties been associated together as partners or joint adventurers. Since this is true the appellant's authorities, in which there were analogous relationships between the parties to the controversies with which such authorities dealt, would not be in point. Appellant cites the case of Dyer v. Sterett, 1952, Tex.Civ.App., San Antonio, 248 S.W.2d 234, in which, under a somewhat similar arrangement to that between Cauker and McCord, it was held that limitation did not bar a plaintiff's claim (to an interest in profits) until after a demand to pay over accrued profits had been made and refused. But in that case the relationship of the plaintiff and defendant was analogous to an instance in which they were in relation to one another as partners or joint adventurers,—whereby the making of a demand would be the same as by a principal to his agent or to a trustee holding his money (see 28 Tex.Jur., p. 141, sec. 57), as was true in the authority it followed, to-wit: Cockburn v. Irvin, 1935, Tex.Civ.App., Beaumont, 88 S.W.2d 747, error dism., or would be an instance where by contract the defendant agreed that the plaintiff should have an interest in the profits of defendant's business as such, rather than that the amount of the profits should serve as a measure of the plaintiff's compensation. Indeed, in the Dyer v. Sterett case it is noted that the jury specifically found that the parties had contracted to split the profits. In the case at hand we do not believe it possible to construe the contract of the parties as one in which McCord was given an interest in the profits as profits, and therefore McCord cannot avoid the operation of limitations against him on a similar premise. The statutes would not be similarly tolled in a case where the profits in which McCord was interested were not profits in which he had a proprietary interest.

In view of what we have said, we are of the opinion that the case should not have been submitted to the jury, and that the action of the trial court in disregarding the verdict of the jury and rendering the judgment which was entered upon the defendant's motion for judgment non obstante veredicto was proper.

Judgment is affirmed.