**Jack FROST, Appellant,**

v.

**George C. WELLS, Appellee.**

No. 7443.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 22, 1965.

Rehearing Denied March 22, 1965.

Trueheart, McMillan & Russell, San Antonio, George H. Hansard, Lamesa, for appellant.

Mitchell Williams, Tahoka, Cayton & Gresham, Lamesa, for appellee.

NORTHCUTT, Justice.

This is an appeal by Jack Frost, individually and operating under the trade name of Jack Frost Ranches, as appellant, from a judgment overruling his plea of privilege to be sued in the county of his residence,

Bexar County, Texas. The exceptions to exclusive venue in the county of the defendant's residence that are invoked by the controverting plea of appellee, George C. Wells, are exceptions 10 and 13 of Article 1995, which were claimed by said plaintiff to give venue to the district court of Lynn County, Texas. The trial court heard the evidence on March 21, 1964, and then took the case under advisement on briefs of both parties rendering judgment on June 8, 1964, denying appellant's plea of privilege. From that judgment appellant perfected this appeal.

The first two points of error presented by the appellant are as follows:

## FIRST POINT

"The trial court erred in overruling and in not sustaining appellant's plea of privilege, for the reason that when the 'Contract of Employment', which is attached to plaintiff's petition 'and made a part hereof for all purposes', is given its proper controlling effect, the nature of the suit as so determined is not one for the recovery of personal property, within exception 10 of Art. 1995, nor one for the partition of such property, within exception 13 of Art. 1995, but is one for simple debt or else for an accounting."

## SECOND POINT

"The trial court erred in overruling and in not sustaining appellant's plea of privilege, for the reason that paragraph 5 of the 'Contract of Employment', which paragraph is invoked in the controverting plea as showing a joint ownership between appellee and appellant, and paragraph 8 thereof, which is invoked by appellee as showing the right to division of property in kind, are both expressly conditioned upon reimbursement of appellant for all expenses and for the value of the base herd ($306,350.00), and it is not alleged in the petition nor the controverting plea that this condition of reimbursement has been satisfied, and it *affirmatively appears* from the undisputed evidence that it has not been satisfied."

On January 1, 1958, Jack Frost and George C. Wells made and entered into a written contract whereby Frost employed Wells as manager of Frost's Ranch Operations. The contract was signed and acknowledged on July 12, 1961. Since this is such a peculiar contract, we set the same out in full as to all of its terms as follows:

"Jack Frost is the owner of various ranches in Texas on which ranches he had cattle, which cattle as of the 1st day of January, 1958, had a value of $306,-350.00; and

"WHEREAS, Jack Frost is desirous of employing George C. Wells as Manager of all of his various ranching operations, and George C. Wells is desirous of accepting such employment.

"NOW THEREFORE, Jack Frost employs George C. Wells as Manager of his ranching operations upon the following terms and conditions:

"1. The Manager shall well and faithfully serve the employer in such capacity and shall at all times devote his whole time, attention and energies to the management, superintendence and improvement of the said ranching business, doeing and performing all such services and acts connected therewith, and properly belonging to the duties of a manager, which the employer may from time to time direct. Such services, attentions and acts shall be performed by the manager to the utmost of his ability.

"2. The books of the ranching operation shall be maintained at employer's office and manager shall furnish all necessary information to employer's bookkeeper so that accurate records may be maintained.

"3. This contract shall remain in full force and effect until terminated by the parties, the right being reserved by either party to terminate the same upon sixty (60) days written notice mailed by registered mail to the last known address of the other party. In case of the death of the employer this contract shall remain in full force and effect until terminated under the above provision by the proper representative of the estate of the deceased, or until terminated by the manager.

"4. Employer shall pay to the manager a salary of $1,000.00 per month. Said salary to begin as of the 1st day of January, 1961. Employer shall further reimburse manager for all necessary expenses expended by manager in furtherance of the operations of the ranching business.

"5. All income from the operation of the ranches shall be applied first to the liquidation of the expenses accruing, including the manager's salary, and after all expenses, including, but not limited to, rents, salaries, taxes, etc., have been reimbursed to employer, then the net income thereafter shall be divided equally between the employer and the manager. All major items purchased and charged as expense shall belong equally to employer and manager. Permanent improvements to employer's ranches shall not be charged as expenses and shall belong to employer. It being understood that no division shall be made until employer shall have been reimbursed for all expenses and salary from the beginning of the contract to the date of distribution of profits.

"6. Employer reserves the right to buy and sell ranches, or lease extra and additional land.

"7. All monies received shall be deposited to the credit of employer in bank or banks designated by him. The manager shall not draw, accept, or make any bill of exchange or promissory note on the behalf of the employer, or otherwise pledge his credit, except so far as he may have been thereto authorized by the employer.

"8. Upon termination of this contract employer shall first be reimbursed for his base herd in the sum of $306,-350.00, as above set out, less the depreciation thereof, which depreciation shall be based on the rate of 8% per year from January 1, 1958. Secondly, Employer shall be reimbursed for all unpaid expenses. Should there not be sufficient money to pay these expenses then sufficient livestock shall be sold to reimburse employer, and employer or manager shall be entitled to purchase the livestock at the prevailing market price. The balance of the herd and major items which have been charged as expense shall then be divided equally between employer and employee.

"9. Employee agrees upon termination of this contract to remove his portion of the herd and property from the lands owned or leased by employer within a period of 60 days."

The contract of employment was terminated effective as of September 1, 1963. Wells first pleaded they entered into a contract of employment and then later in his petition pleads it was a partnership and seeks to hold venue in Lynn County under Sections 10 and 13, Article 1995 as owner of a portion of the cattle as a partner. Section 10 provides that a suit for the recovery of personal property may be brought in any county where the property may be or where the defendant resides. Section 13 provides suit for partition of land or other property may be brought in the county where such lands or other property or a part thereof may be.

Since Wells attached a copy of the contract to his petition and made it a part thereof, we think the contract takes pre-

cedence over the allegations of the petition and we must look to the contract as determining the matters here. Paul v. Houston Oil Co. of Texas, 211 S.W.2d 345 (N.R.E.); Cawley v. Security State Bank & Trust Co., Tex.Civ.App., 126 S.W.2d 715. The real question to be determined is whether this is really a suit for an accounting or a partition of personal property or to recover personal property.

■ We are familiar with the distinction between a trial upon a plea of privilege and a trial upon the merits of a case. The sole matter to be determined upon a hearing on a plea of privilege is to determine whether the defendant is suable on the transaction involved in the county where the plaintiff files his suit. Compton v. Elliott, Tex.Com. App., 126 Tex. 232, 88 S.W.2d 91 and cases there cited.

■ Under the above mentioned contract we do not believe there was any partnership created nor a joint adventure and we hold as a matter of law under the contract it was purely a contract of employment and any interest that Wells might ever have in the cattle would be a part of his compensation as an employee. Wells did not plead that any of the terms required under the contract had been complied with authorizing him to acquire any interest in any of the cattle. Under the terms of the contract no division was to be had until the employer, Frost, was reimbursed for all expenses and salary from the beginning of the contract to the date of distribution of profits and neither did Wells allege Frost had been paid for his base herd in the sum of $306,-350.00, less the depreciation. All of these matters had to be complied with before any division was to be had.

It is stated in McCord v. Ft. Worth National Bank, Tex.Civ.App., 275 S.W.2d 717 (N.R.E.), as follows:

"* * * it seems clear to us that McCord was neither made a partner of Cauker nor a joint adventurer with him under this contract. * * * McCord did not have the right to dispose of any interest therein as an owner of an interest. He did not have the right to share in the profits of Cauker as a principal. Therefore, under the established rules of law in Texas he would be neither a partner nor a joint adventurer. * * * We believe that McCord had only a contractual right to have his compensation based upon a computation of the profits and, as thus computed, paid over to him when it was earned, and his interest in such profits was common to Cauker's only because the profits were to serve as a measure of the compensation he would receive for his services. * * * No part of the profits would be property of McCord held by Cauker as his agent. But such profits would merely constitute a yardstick or measure whereby the amount of compensation due him from Cauker would be computed. So, if indeed Cauker did not pay McCord all that he should have paid him under the contract, McCord's claim against him would be a personal claim, identical to a claim for simple debt founded on written contract."

It is stated in Le Bus v. Le Bus, 269 S.W. 2d 506, Tex.Civ.App. (N.R.E.) as follows:

"In order for there to be a partnership the parties must not only participate in the profits but they must have an interest in the profits, as profits, and share them as joint owners or principals of the business or venture, as distinguished from an interest therein as compensation under a profit sharing agreement. Tanner v. Drake, Tex.Civ. App., Eastland, 1932, 47 S.W.2d 452, affirmed in Tex.Com.App. 1935, 124 Tex. 395, 78 S.W.2d 162; Mangum v. Turner, Tex.Civ.App., Amarillo, 1940, 142 S.W.2d 951, error dismissed; Pyron v. Brownfield, Tex.Civ.App., Amarillo, 1922, 238 S.W. 725; Buzard v. Bank of Greenville, Sup.Ct.1886, 67 Tex. 83, 2 S.W. 54, 60 Am.Rep. 7; Storey on Partnership, sec. 33, et seq.; Rowley on Modern Law of Partner-

ship, p. 65, sec. 69, et seq.; 47 C.J., p. 669, sec. 62; 68 C.J.S., Partnership, § 17, p. 428; 32 Tex.Jur., p. 228, sec. 8, and p. 240, sec. 18."

■ Wells, being an employee and not a partner and there being no pleadings to show Frost had been paid as provided for in the contract before Wells would be entitled to any interest in the cattle or right of possession, we are unable to see where he would be entitled to possession of any of the property in question at the time he filed his suit. Consequently, venue could not be sustained in Lynn County under exception 13, Article 1995. It is stated in Collins v. Naylor, Tex.Civ.App., 192 S.W.2d 332 as follows:

"The last cited case was one for partition of land; an action brought by one who had an interest therein but was not entitled to possession, and it was held that since plaintiff was not entitled to possession, the action for partition could not be maintained. The same rule is announced in Medina Oil Development Co. v. Murphy, Tex.Civ. App., 233 S.W. 333, writ dismissed. It must be conceded that plaintiff (appellee) was not entitled to possession of any of the assets of the partnership at the time she instituted this suit. We therefore conclude that venue in Tarrant County cannot be sustained under exception 13 to Article 1995."

See also the case of Miller v. Howell, Tex.Civ.App., 234 S.W.2d 925 at 929, where it is stated:

"Plaintiffs say that their suit is one to recover land, and to partition land, and to foreclose a lien on land, a part of which land lies in Wood County. Their pleadings may contain conclusions to such effect, if the conclusions are read without regard to the remaining allegations in the pleadings, but when the pleadings are examined in their entirety, and when it is endeavored to find out what principal right or rights are asserted and what relief is sought, it is seen that the suit falls within a well-defined category. It is, by all standards, an equitable proceeding for a partnership accounting. It is a transitory action, rather than a local one, it is primarily a proceeding in personam, rather than a proceeding in rem."

Wells under his pleadings herein seeks to recover as a partner asking that a receiver be appointed with power to sell and pay all debts of the partnership. We must look to the contract as it is made a part of the pleadings and takes precedence over the allegations of the petition and appellant may not recover as a partner.

■ The contract in question provided no division should be made until the employer had been reimbursed for all expenses and salary. The expenses were *all expenses* (emphasis ours) including but not limited to rents, salaries, taxes, etc. The contract further provided that upon termination of the contract the employer *shall first* (emphasis ours) be reimbursed for his base herd in the sum of $306,350.00, less the depreciation thereof based on the rate of 8% per year from January 1, 1958. We construe those provisions as a promise upon the part of Frost to do certain things when Wells did a certain thing and was not enforceable until Wells complied with those conditions. It is stated in Gulf Pipe Line Co. v. Nearen, 135 Tex. 50, 138 S.W.2d 1065, as follows:

"It has been ruled in this state that where a promise is conditioned upon the happening of a future event as a rule a condition precedent must be exactly performed or fulfilled before the promise can be enforced. Reagan v. Bruff, 49 Tex.Civ.App. 226, 108 S.W. 185; Cooksey v. Jordan, Tex.Civ.App., 140 S.W. 1175. It was decided that 'It is quite elementary that an instrument payable upon a condition which does not import an absolute liability is not payable until that condition has hap-

pened.' Ferguson v. Mansfield, 114 Tex. 112, 263 S.W. 894, 900. It is also elementary that a party to a contract who is himself in default cannot maintain a suit for its breach. Smith v. Fort, Tex.Civ.App., 58 S.W.2d 1080."

Wells does not plead any compliance with the terms of the contract authorizing him to have any interest in the cattle but seeks to have an interest by pleading a partnership contrary to the employment contract. We do not believe he has brought this case within exceptions 10 or 13 of Article 1995 as to defeat Frost's rights to be sued in the county of his residence as laid down by the Supreme Court in A. H. Belo Corporation v. Blanton, 133 Tex. 391, 129 S.W.2d 619, where it is stated:

"The dominant purpose of our venue statutes is to give a person who has been sued the right to defend such suit in the county of his residence, except under well-defined exceptions. This rule was declared in the case of Pool v. Pickett, 8 Tex. 122, and has been consistently followed since that time.

"To deprive a defendant of the right of trial in the county of his domicile, the case filed against him must clearly come within one of the exceptions found in this statute, and the burden rests upon the plaintiff to allege and prove that the case comes within the exception. Meredith v. McClendon, 130 Tex. 527, 111 S.W.2d 1062; Coalson v. Holmes, 111 Tex. 502, 240 S.W. 896; Lasater v. Waits, 95 Tex. 553, 68 S.W. 500; Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91."

We sustain appellant's first two assignments of error. Since we are of the opinion that the sustaining of appellant's first and second assignments of error requires reversal of the case, we will not discuss the remaining assignments of error.

Judgment of the trial court is reversed and the case ordered transferred to a district court in Bexar County, Texas.