**CITY OF SAN ANTONIO et al., Appellants,**

v.

**GUIDO BROS. CONSTRUCTION COMPANY et al., Appellees.**

**No. 7157.**

Court of Civil Appeals of Texas, Beaumont.

Oct. 15, 1970.

 

Howard C. Walker, City Atty., Crawford B. Reeder, Asst. City Atty., Samuel S. Wolf, Chester H. Johnson, San Antonio, for appellants.

Paul E. Casseb, Sawtelle, Goode, Troilo, Davidson & Leighton, James B. Langham, San Antonio, for appellees.

KEITH, Justice.

Plaintiffs recovered judgment against City of San Antonio, a Home Rule City (hereinafter "City") and San Antonio Fair, Inc., a non-profit corporation (hereinafter "Fair"), jointly and severally from which the defendants below have appealed.

### 1. Plaintiffs' Motion to Strike Briefs

Before we reach the merits of the appeal, as presented by the briefs of the parties, we must first consider the objections of the plaintiffs to the adequacy of the briefs filed by the City and by Fair. Plaintiffs contend that Fair's points are not supported by appropriate assignments in the motion for new trial; and, as to City, the contention is that both the assignments in the motion for new trial and the points themselves are deficient.

We have carefully reviewed the motions for new trial filed by City and by Fair; and, for the purposes of this opinion, we may concede that many of the assignments of error therein contained were insufficient upon which to predicate points of error. On the other hand, many of City's assignments were sufficient under the rules and the decisions. As to those which were deficient, many of the infirmities mentioned in the celebrated case of Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960), are to be found in our record. Some of the assignments are insufficient under Rule 320, as explained and interpreted in Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407, 409 (1943).

However, both City and Fair filed motions for judgment non obstante vere-

dicto which were duly presented, considered, and overruled. Additionally, City filed its motion to disregard many of the findings of the jury as to the special issues contained in the charge. Under these circumstances, City and Fair were not required to include in their respective motions for new trial the grounds contained in their motions N.O.V., and to disregard the answers. Wagner v. Foster, supra (341 S. W.2d at p. 890); Rule 324; Burch v. Southwest Title Company, 450 S.W.2d 752, 753 (Tex.Civ.App.—San Antonio, 1970, no writ); Texas General Indemnity Co. v. Dickschat, 440 S.W.2d 922, 923 (Tex.Civ. App.—Waco, 1969, error ref. n. r. e.); Employers Mutual Casualty Co. v. Poorman, 428 S.W.2d 698, 699 (Tex.Civ.App.—San Antonio, 1968, error ref. n. r. e.).

When we turn to a consideration of the points of City and of Fair, which we will discuss hereinafter, we consider the rule for our guidance to have been laid down by Justice Critz in Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478, 482 (1943), wherein he discussed briefing rules, saying:

> "Our present briefing rules were adopted for the purpose of simplifying the briefing of cases so that greater attention will be devoted to the presentation of the merits of the appeal, and less attention given to the mechanics of the brief. * * * If a 'point' is sufficient to direct the Court's attention to the matter complained of, the Court will look to the 'point' and the statement and argument thereunder to determine the question of reversible error. Simply stated, the Court will pass on both the sufficiency and the merits of the 'point' in the light of the statement and argument thereunder."

The more recent cases follow the same trend. For instance, in Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286, 292 (1951), Chief Justice Calvert spoke of "our liberal briefing rules," while the late Justice Norvell, in Brazos River Authority v. City of Graham, 163 Tex. 167, 354 S.W.2d 99, 132 (1962), said, "This Court has adopted a liberal rule with reference to the construction of points contained in appellate briefs and applications for writ of error."

The points of error found in the briefs of Fair and of City which we will consider hereinafter are, in our opinion, sufficient to warrant our attention. Plaintiffs' motions to strike are, consequently, overruled.

## 2. Statement of Case

On April 2, 1964, City adopted its Ordinance No. 32214, appointing Fair as its agent to plan, develop, manage, and operate HemisFair with authority to negotiate and execute all lease agreements, etc., with exhibitors, concessionaires, etc. The ordinance required Fair to indemnify City from all liability and contained Section 17 requiring Fair to include in all contracts with third parties for improvements located on the site of HemisFair a provision "whereby said third party contractor can in no way look to the City of San Antonio for satisfaction of any claims arising out of any such contract." Thereafter, on April 15, 1965, City adopted its Ordinance No. 33221 authorizing the City Manager to lease the land involved to Fair. The lease also contained the provision with reference to non-liability of City as provided in Section 17 of the original ordinance.

Plaintiffs, building contractors, entered into separate contracts at divers times with Fair to construct certain improvements upon the site of HemisFair. None of such contracts was entered into by any official action of City, nor were such contracts the result of competitive bidding as required by Article 2368a, Vernon's Ann.Civ.St., nor did the contracts contain the non-liability clause required by the two ordinances. Each of the plaintiffs discharged all of their respective obligations under the several contracts and there is no dispute as to the value of the improvements, or the amounts originally due the several plaintiffs by Fair.

Fair, in order to procure funds with which to construct the improvements for use in the conduct of HemisFair, procured underwriting agreements or subscriptions from public-spirited citizens and corporations amounting to $6,000,000.00 upon which it obtained bank loans amounting to $4,-500,000.00 (hereinafter "First Bank Loan"). This sum proved to be inadequate and about a month before HemisFair opened, a "Second Bank Loan" in the amount of $2,550,000.00 was procured upon a new series of underwriting agreements or subscriptions.

HemisFair opened on schedule, but did not prove to be a financial success and within a few weeks or a month thereafter, it was apparent that without massive infusions of new capital, the plaintiffs and other creditors would not be paid from the revenues generated from the operation of HemisFair. Negotiations commencing as early as May, 1968 finally brought about the execution of what is known in our record as the "Settlement Agreements" dated August 16, 1968, upon which plaintiffs recovered their judgment in this cause.

These Settlement Agreements were identical except for the names of the parties and the amounts of their respective claims and payments. In essence, the agreements provided that Fair would pay the claims of the signatory contractors as follows:

Ten (10%) per cent would be paid by a deferred payment certificate; "Approxi-mately 65.37% of the balance remaining after the deduction of the deferred payment certificates shall be paid in cash * * * [and] * * * approximately 34.63% of such remaining unpaid balance shall be paid in tickets * * *" to Hemis-Fair, which plaintiffs could sell. Each of the several plaintiffs received cash, a deferred payment certificate, and certain tickets.[1]

In summarizing the contents of the Settlement Agreements, we do so as briefly as possible. The preamble recited that there were certain sums due the several contractors by Fair and that "there are insufficient funds available to San Antonio Fair, Inc. for the payment of such sums in cash at this time, and it is desired that such unpaid contract sums be paid on a proportionate basis." Provisions in the agreements included: (1) acknowledgment by contractors of the sums due and the method of payment as indicated in footnote 1, supra; (2) acknowledgment of payment of the cash consideration, and (3) of delivery of the deferred payment certificate; and (4) receipt of HemisFair tickets.[2]

Then follows the critical language of paragraph 6, which we quote:

"The undersigned contractor hereby releases and discharges San Antonio Fair, Inc., Fair Syndicate, Inc, and their executive committees, directors, officers, employees and agents, and the City of

---

1. The following table indicates the allocation of the several modes of payment of the claims of our several contractors:

| Contractor-Plaintiff | Cash | Deferred Payment Certificate | Tickets |
|---|---|---|---|
| Guido Bros. | $691,900.00 | $171,600.00 | $335,990.00 |
| Clark Electric | 32,700.00 | 14,300.00 | 17,300.00 |
| R. L. Brand | 135,500.00 | 64,100.00 | 71,700.00 |
| Wright Electric | 23,600.00 | 13,600.00 | 12,500.00 |

The cash payments were made in the form of cashier's checks physically delivered to Hon. Paul Casseb, trial counsel for the plaintiffs.

2. Some of the tickets were sold before the close of HemisFair and plaintiffs received the sums set opposite their respective names: Guido Bros., $59,008.06; Brand, $11,520.94; Clark, $2,629.50; and, Wright, $2,278.90.

San Antonio and The Urban Renewal Agency of San Antonio, from all actions, suits, causes of action, claims and demands whatsoever which the undersigned contractor has or may have against one or more of them under or arising out of the contracts between the undersigned contractor and San Antonio Fair, Inc. or any acts in connection therewith; . . . [the remainder of this paragraph, being a proviso, is quoted in footnote 11, infra]."

HemisFair ended on October 6, 1968 with a loss in excess of $4,000,000.00, the exact figure as confirmed later by the auditors being $4,352,701.68.

On October 7, 1968, the day after Hemis-Fair finally closed, the plaintiffs filed their original petition in this cause. Their trial pleading, their First Amended Original Petiton, which added URA[3] as a defendant, sought to impose liability upon these theories: (a) the ordinances previously mentioned created a joint venture between City and Fair, thus making each liable for the acts of the other; (b) the two ordinances, taken with the subsequent conduct of the parties, made City and Fair joint adventurers; (c) alternatively, subdivisions (a) and (b), supra, created a principal-agent relationship between City and Fair, thus making City liable for and bound by Fair's contracts; (d) alternatively, City's requirement in the second ordinance that Fair erect improvements upon the leased premises "constituted Fair the agent of the City" thus binding City to Fair's construction contracts; (e) still in the alternative, if the previous theories were incorrect, plaintiffs should recover on a quantum meruit theory since they actually constructed the improvements and City received the benefit thereof; and (f) in any event, plaintiffs had a constitutional and statutory lien upon the leased premises.

Although plaintiffs' recovery is based upon the Settlement Agreements, they did not seek to recover thereon in their First Amended Original Petition (their trial pleading) and did not even mention the existence of such Settlement Agreements therein. For the first time, in a trial amendment filed near the conclusion of the long trial, plaintiffs urged alternative theories of recovery thereon. One paragraph of the trial amendment declared "upon the theory of a contract implied by law" since, it was alleged, City had received, and URA "potentially may" receive, title and possession of the improvements and each will have received benefits. The second count in the trial amendment alleged that plaintiffs were entitled to recover on the deferred payment certificates and ticket repurchase agreements, or alternatively, their damages for the breach thereof. We quote this paragraph in the margin.[4]

City defended upon several grounds: (a) the ordinances mentioned did not bind City to Fair's construction contracts, primarily because of the provisions of non-liability on the part of City required by Section 17 of the first ordinance, previously quoted, which also appeared in the second ordinance; (b) an alternative pleading of ultra vires with respect to the two ordinances; (c) the "Settlement Agreements" operated as a complete release of City even

---

3. Urban Renewal Agency of the City of San Antonio (hereinafter "URA").

4. "In the alternative and only in the event Plaintiffs are not entitled to recover on any of the causes of action heretofore alleged, then in that event Plaintiffs say they are entitled to recover from the City of San Antonio the amount of each Plaintiff's respective Deferred Payment Certificate and the respective amounts due each Plaintiff for the repurchasing of the HemisFair tickets under the alleged settlement agreement, or in the alternative, their damages for the breach of the alleged settlement agreement, since San Antonio Fair, Inc., was the agent for the City of San Antonio, or alternatively San Antonio Fair, Inc. and the City of San Antonio were engaged in a joint venture or enterprise in the planning and development of all the lands and facilities within the HemisFair site."

though it did not participate in the negotiation thereof. By trial amendment, City denied under oath that Fair had any authority to bind City on any theory of agency, joint enterprise, or otherwise to any construction contracts with third parties.

Fair answered by the general denial, a plea of settlement and release by tendering the Settlement Agreements, and specially pleaded that Fair had no funds in excess of its obligations under the first and second bank loans, consequently had no obligation to plaintiffs under the terms of the Settlement Agreements.

At the conclusion of the evidence, the court submitted seventeen special issues to the jury, and we now summarize those important to our later consideration of this appeal. Each question now mentioned was answered affirmatively:

(1) City and Fair entered into an "implied contract" for the "planning, developing, managing and operating" of HemisFair;

(2) Pursuant to such "implied contract", City and Fair "jointly undertook to plan, develope, manage and operate" HemisFair;

(3) Such joint undertaking was "in contemplation of the parties thereto, for the mutual benefit or profit" of City and Fair;

(5) City appointed Fair "its agent with authority to plan, develop, manage and operate" HemisFair " * * * which authority included the planning and developing of all land and facilities within the physical Fair site, with the exception of the Convention Center and the City Library."

(14, 15, 16, ad 17) Fair was acting within the scope of its authority (with City) when it executed the several contracts with the several plaintiffs.[5]

The court entered judgment for each of the several plaintiffs for the amount of the deferred payment certificate issued to such plaintiffs plus the value of the unsold HemisFair tickets so received.[6] In doing so, the court made an independent finding (i. e., one not supported by a jury finding) that Fair had transferred to its "co-adventurer", City, assets "market-valued between them" at $699,089.66 and:

" * * * that such transfer was and is of no binding effect or consequence on these Plaintiffs; that these assets should have been used as the first funds available to these Defendants out of which to have discharged their obligations to these Plaintiffs under the respective 'Settlement Agreements' entered into."

A further finding was made in the judgment that the assets so transferred were no longer available "in such form and value; that the money value equivalent thereto should now be used to pay each Plaintiff" the amount of his deferred pay-

5. Issues Nos. 4, 4-A, 4-B, and 4-C asked the jury to find the amount the respective plaintiffs received from the sale of HemisFair tickets received in the Settlement Agreements, fn. 2, supra.
Issues Nos. 6 through 13 found that as a result of labor performed and materials furnished by the respective contractor-plaintiffs, City received "benefits arising from the performance of such labor and the furnishing of such materials" in an amount in excess of the claim of each contractor.

6. The recoveries of the several plaintiffs were as follows:

| Contractor-Plaintiff | On Deferred Payment Certificate | On Unsold Tickets | Total Recovery |
|---|---|---|---|
| Guido Bros. | $171,600.00 | $220,401.60 | $392,001.60 |
| Brand | 64,100.00 | 45,118.00 | 109,218.00 |
| Clark | 14,300.00 | 11,374.70 | 25,674.70 |
| Wright | 13,600.00 | 7,243.70 | 20,843.70 |

Interest was allowed from October 6, 1968, the date of the close of HemisFair, at the statutory rate. Plaintiffs' prayer for the fixing and foreclosing of their respective liens was denied.

ment certificate and the value of his unsold tickets.

### 3. Fair's Obligations Under Settlement Agreements

■ The liability of Fair upon the Deferred Payment Certificate and the Agreement to Repurchase Fair Tickets was not absolute, but conditional.[7] As was said by Chief Justice Cureton in Ferguson v. Mansfield, 114 Tex. 112, 263 S.W. 894, 900 (1924):

> "It is quite elementary that an instrument payable upon a condition which does not import an absolute liability is not payable until that condition has happened. [citations omitted]."

Accord: Minchen v. Fields, 162 Tex. 73, 345 S.W.2d 282, 286 (1961); Gulf Pipe Line Company v. Nearen, 135 Tex. 50, 138 S.W.2d 1065, 1068 (1940). See also, Toland v. Kaliff, 435 S.W.2d 260, 262 (Tex.Civ. App.—San Antonio, 1968, no writ); Frost v. Wells, 388 S.W.2d 235, 239–240 (Tex. Civ.App.—Amarillo, 1965, error dism.); Zeluff v. Ekman, 386 S.W.2d 838, 841–842 (Tex.Civ.App.—Houston, 1965, no writ); Perry v. Little, 377 S.W.2d 765, 769 (Tex. Civ.App.—Tyler, 1964, error ref., n. r. e.); Lallier v. Mueller, 300 S.W.2d 293, 297 (Tex.Civ.App.—Galveston, 1957, error ref. n. r. e.); Ebberts v. Carpenter Production Co., 256 S.W.2d 601, 617 (Tex.Civ.App.— Beaumont, 1953, error ref. n. r. e); Tennant v. Buratti & Montandon, 215 S.W.2d 201, 202 (Tex.Civ.App.—Austin, 1948) affirmed, 147 Tex. 536, 218 S.W.2d 842 (1949).

The rule announced in Ferguson, supra, is in accord with the general statements of the text writers. 5 Williston on Contracts (3d Ed., 1961), § 666A, p. 141; 1 Restatement of the Law of Contracts, § 250, p. 359; 17A C.J.S. Contracts § 338, pp. 318–319; 17 Am.Jur.2d, Contracts, § 321, p. 751; 13 Tex.Jur.2d, Contracts, § 151, pp. 334–335.

Plaintiffs offered documentary evidence (Plaintiffs' Exhibit 15) showing that on August 1, 1968, Fair had a net deficit of more than $7,500,000.00, after the receipt of the proceeds of the third loan was included in the assets. This instrument also predicted a net deficit, at the close of HemisFair, in excess of $1,700,000.00. Plaintiffs also offered the audit report of Ernst & Ernst (Plaintiffs' Exhibit 25), as of December 31, 1968, showing that Fair's actual deficit was $4,352,701.68. This report also showed that the second underwriting group had paid, or was liable to the banks for, the sum of $1,874,539.90.[8]

Where, as in this case, the contract contains a condition precedent, the burden of proof is upon the party seeking to impose liability thereon to establish the happening of the events upon which the condition was based. Kinnison Bros. v. Steger, 11 S.W.2d 527, 529 (Tex.Civ.App.—Texarkana, 1928, error dism.). Indeed, it is said that when such condition precedent appears in a con-

---

7. *Deferred Payment Certificate*: "Payment of this certificate shall be made out of funds and assets first available after payment of (a) the bank loans secured by the first and second underwriting agreements dated August 1, 1963 and March 5, 1968, and (b) current operating expenses of San Antonio Fair, Inc. through the end of the fair, but payment shall be made prior to payment of bank loans secured by the third underwriting."

The ticket *repurchase* obligation included conditions (a) and (b), found in the deferred payment certificate and a third condition: "(c) deferred payment certificates issued to contractors and other creditors of San Antonio Fair, Inc."

8. We recognize that plaintiffs were not absolutely bound by the facts contained in these instruments *simply because* they introduced such evidence. Gevinson v. Manhattan Construction Company of Oklahoma, 449 S.W.2d 458, 466 (Tex. Sup., 1969). But, plaintiffs made no effort to refute such evidence nor did they tender evidence even remotely tending to show that Fair was ever in a solvent condition, before or after the opening of HemisFair.

tract, the fulfillment of the named condition becomes a prerequisite to the debtor's promise. York v. Hughes, 286 S.W. 165, 167 (Tex.Com.App., 1926); McDonald v. Grey, 29 Tex. 80, 82 (1867); Smallwood v. Melton, 97 S.W.2d 781, 785 (Tex.Civ.App.—Fort Worth, 1963, error dism.).

Plaintiffs, basing their recovery entirely upon the deferred payments certificates and the agreement to repurchase the tickets (as provided in the Settlement Agreements), assumed the burden of offering evidence of probative value to establish that the condition precedent had been fulfilled, i. e., that the first and second loans had been paid. No such proof was offered. Cf. Andretta v. West, 318 S.W.2d 768, 773 (Tex.Civ.App.—Texarkana, 1958, error ref. n. r. e.).

■ Plaintiffs seek to escape the rule of law with reference to pleading and proof of the happening of the conditions precedent to liability by invoking the provisions of Rule 94. This contention is advanced by the language found in counterpoint two, subdivision (2), quoted in the margin.[9] In so urging the contention, plaintiffs have wholly ignored the provisions of Rule 54, T.R.C.P. It is clear that plaintiffs did not allege, even generally, "the performance or occurrence of conditions precedent" as required under Rule 54; and, by their Exhibits Nos. 15 and 25, conclusively proved that such conditions precedent had not occurred.

■ Plaintiffs' reliance upon Rule 94 is misplaced. This latter rule simply requires that certain affirmative *defenses* be specially pleaded, including therein accord and satisfaction as well as release. City and Fair both pleaded the Settlement Agreements in defense of the claims of plaintiffs, even to the extent of attaching copies

thereof to their respective answers. If plaintiffs intended to recover upon the basis of the Settlement Agreements, their pleading should have included an appropriate allegation that the conditions precedent had occurred. Salinas v. Wright, 11 Tex. 572, 576 (1854); 71 C.J.S. Pleading § 80, p. 193; Wright v. Farmers' Nat. Bank, 31 Tex.Civ.App. 406, 72 S.W. 103, 104 (1903, no writ). Cf. Burlington-Rock Island Railroad Company v. United States, 321 F.2d 817, 821 (5th Cir., 1963), construing Texas law. Having failed to allege or to prove the happening of the conditions precedent, plaintiffs were not entitled to recover upon the basis of the Settlement Agreements.

■ Plaintiffs cannot support their judgment upon the independent finding by the court that Fair had transferred to City certain assets "market-valued between them" at nearly $700,000.00 (ante, p. 10). Such a finding, not resting upon undisputed evidence, was a facet of the conditional agreement upon the part of Fair to pay the contractors under the Settlement Agreements. As has been pointed out previously (pp. 11–14), plaintiffs neither pleaded nor proved the happening of the conditions precedent to liability under the Settlement Agreements. Additionally, had there been sufficient pleading to support a finding, plaintiffs did not request the submission of such an issue and the same was waived. Rule 279; Glens Falls Insurance Company v. Peters, 386 S.W.2d 529, 531 (Tex.Sup., 1965); Lawyers Trust Company v. City of Houston, 359 S.W.2d 887, 891 (Tex.Sup., 1962); McCarver v. City of Corpus Christi, 155 Tex. 153, 284 S.W.2d 142, 143 (1955).

It follows, from the foregoing, that plaintiffs have not shown any right of recovery against Fair, and that the judgment against Fair must be reversed and

---

9. "The contention that San Antonio Fair, Inc. did not have assets, in excess of its obligations due on its first two bank loans and its current operating expenses, is an affirmative defense, in the nature of a plea in avoidance under Rule 94, T.R.C.P.; and, not having been conclusively established by the evidence, this Appellant's failure to request an issue thereon, results in such plea now being deemed waived on appeal; * * *"

judgment rendered that plaintiffs take nothing against Fair. This disposition of the claim against Fair does not, however, completely dispose of the contention that City became liable jointly with Fair upon the obligations set out in the Settlement Agreements, and to this aspect of the case we now turn.

### 4. City's Liability to Plaintiffs

From our review of the record, it appears that plaintiffs' claim against City was more in the nature of an afterthought than a bona-fide original attempt to hold City to Fair's construction contracts. At the outset, we note that City was not a party to the original contracts of the plaintiffs with Fair. No one disputes the fact that the contracts were entered into without compliance with the competitive bidding requirements imposed upon the City by the provisions of Article 2368a, V.A.C.S. and § 101 of its Charter. Such original contracts did not create any liability upon the part of City, even if it had been a party thereto. Vilbig Bros. v. City of Dallas, 127 Tex. 563, 91 S.W.2d 336, 339, 96 S.W.2d 229 (1936); Niles v. Harris County Fresh Water Supply Dist. No. 1A, 336 S.W.2d 637, 638 (Tex.Civ.App.—Waco, 1960, motion for rehearing overruled: 339 S.W.2d 562, 563, error ref.).

Plaintiffs negotiated their several contracts with Fair—not City—and performed the work required thereunder. They accepted partial payments from Fair and entered into the formal Settlement Agreements without City being made a direct party thereto, although the release did run in favor of City. In their dealings with Fair, they were charged with notice that Fair's authority with reference to contracts was severely limited by Section 17 of the first ordinance; and since Fair was only the lessee of the land upon which plaintiffs' improvements were located, plaintiffs were charged with notice of the terms of the lease which contained a reversionary provision with reference to the improvements. Cf. Grube v. Nick's No. 2, 278 S.W.2d 252, 253 (Tex.Civ.App.—El Paso, 1955, error ref. n. r. e.).

Countering this contention made by City and Fair, plaintiffs now assert that certain officials of City, including its Mayor, were present during some of the negotiations and took active part in the affairs of Fair. But, plaintiffs were charged with notice of the limitation upon City's authority, as was said in City of Beaumont v. Moore, 146 Tex. 46, 202 S.W.2d 448, 452 (1947):

> " * * * it is well established in Texas that because of the fact that the powers of a ,municipal corporation are wholly statutory, a person dealing with a municipality is bound to know the extent of its authority and the limitations on its powers. [citations omitted]."

Plaintiffs were also charged with notice of the provisions of Article II, § 4 of the Charter of City, which vested in the City Council:

> " * * * all powers now or hereafter conferred on the City; * * * [and the City Council] * * * shall have the general care, management and control of the City, its property and finances, and shall enact, alter, modify or repeal all ordinances and resolutions not repugnant to this Charter and the Constitution and laws of Texas."

The provisions of Article VII, § 101 of the Charter likewise vested in the City Council the authority to enter into contracts, another provision with which plaintiffs were charged with notice.

It has long been well established in Texas that individual members of the Commissioners' Court have no authority to bind the county by their separate action, and that the action must be by the governing body, the Commissioners' Court. Canales v. Laughlin, 147 Tex. 169, 214 S.W.2d 451, 455 (1948); Hill Farm, Inc. v. Hill County, 425 S.W.2d 414, 419 (Tex.Civ.App.—Waco,

1968), affirmed, 436 S.W.2d 320 (Tex.Sup., 1969); Gano v. Palo Pinto County, 71 Tex. 99, 8 S.W. 634, 635, (1888).

■ We now apply the same rule to the action of the City Council so that, whatever may have been the participation of the Mayor and the other City officials in the conferences, such did not constitute *official* action by the City of San Antonio and no liability can be predicated thereon. As a matter of law, Fair was not the agent of City either at the time of the execution of the original contracts with plaintiffs or at the time of the delivery of the Settlement Agreements upon which the recovery is based.

■ Plaintiffs' theory of joint venture between City and Fair, as submitted in the first three special issues previously summarized, likewise fails to withstand judicial scrutiny. Assuming, *arguendo*, the right of City to engage in a joint venture for profit (a matter of grave doubt and upon which we express no opinion),[10] plaintiffs may not prevail. This doctrine of joint adventure is of rather recent origin and is still in the process of development [Nelson v. Fulkerson, 155 Tex. 298, 286 S.W.2d 129, 130 (1956)], but one thing is certain—whether or not the relationship exists depends upon the intention of the parties. Luling Oil & Gas Co. v. Humble Oil & Refining Company, 144 Tex. 475, 191 S.W.2d 716, 722 (1946); Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704, 709, 59 A.L.R.2d 1011 (1956). We find no evidence in the record that there was ever any expressed intention on the part of City, *acting by its City Council*, to create any such relationship.

Justice Bateman, speaking in North Texas Lumber Company v. Kaspar, 415 S.W.2d 470, 473 (Tex.Civ.App.—Dallas, 1967, error ref. n. r. e.), relying upon sound authority, said:

"Essential elements of a joint adventure are a community of interest in the undertaking, a right in all parties to the transaction to share in the profits and an *obligation* on the part of each of them to share the losses. A joint adventure is in the nature of a partnership but is usually limited to a particular transaction or enterprise, and whether the relationship exists generally depends upon the intention of the parties.

\*  \*  \*  \*  \*  \*

"Another element necessary to create a joint adventure is a mutual right of the contracting parties to control the enterprise." (Emphasis supplied.)

None of the required prerequisites of a joint adventure are shown in our record, and plaintiffs may not prevail upon that theory.

Plaintiffs' reliance upon the theory of quantum meruit can avail them nothing. As was said by Justice Griffin in Davidson v. Clearman, 391 S.W.2d 48, 50 (Tex. Sup., 1965):

"The right to recover on quantum meruit does not grow out of the contract, but is independent of it. It is based upon the promises implied by law to pay for beneficial services rendered and knowingly accepted. [citations omitted]."

The hard and stubborn fact is that plaintiffs contracted with Fair—completely ignoring City and the legal requirements for competitive bidding—performed their respective jobs, compromised with Fair, executed general releases in consideration of

---

10. Thus we do not reach the constitutional question presented by Article 3, § 52, Constitution of Texas, prohibiting a city from lending its credit or granting public money, and the provisions of Article 3, § 53, prohibiting the payment of claims "under any agreement or contract, made without authority of law." Nor do we reach the "debt" provision found in Article 11, § 5 of the Constitution. Cf. Brown v. Jefferson County, 406 S.W.2d 185 (Tex.Sup., 1966), construing the parallel provision applicable to counties.

money and conditional promises, and now seek to impose liability upon City for Fair's debts. They labored under the burden of proving that they performed their work for City expecting to be paid therefor by City. Cf. Scott v. Walker, 141 Tex. 181, 170 S.W.2d 718, 720 (1943). In this respect, they failed.

The attempt to predicate liability of City upon the "implied contract" theory must likewise fail. Plaintiffs performed their work and became entitled to be paid by Fair under specific and express written contracts. They have recovered judgment against Fair and City upon specific written contracts, the "Settlement Agreements." They now urge, in support of the judgment, the jury finding of implied contract. The answer is found in Phoenix Lumber Company v. Houston Water Company, 94 Tex. 456, 61 S.W. 707, 709 (1901):

"If there was an express contract, there could be no implied contract arising out of the acts of performance of it. The one is destructive of the other. Two things which cannot co-exist will not constitute one and the same thing."

See also, Musick v. Pogue, 330 S.W.2d 696, 699 (Tex.Civ.App.—San Antonio, 1959, error ref. n. r. e.), by Justice Pope while sitting upon the Court of Civil Appeals.

Finally, we come to the validity of the "Settlement Agreements" and in doing so encounter the thrust of plaintiffs' argument that such agreements do not preclude their recovery because (a) lack of consideration, (b) there could be no compromise and settlement because there was no dispute as to the amount owed plaintiffs, (c) there was no accord and satisfaction because their claims were liquidated, and (d) Fair did not settle with all of its creditors upon the same basis.

The early rule at the common law was that payment of a lesser sum than the full amount of the debt which was due could not constitute satisfaction for the whole;

but, through the years, so many exceptions have been engrafted thereon that the rule has lost much of its force. See, 1 Am.Jur. 2d, Accord & Satisfaction, § 35, p. 333. One of the more important exceptions is the known insolvency of the debtor. Plaintiffs knew that if they filed their threatened suit seeking a receivership in August, that Fair would be unable to procure the additional financing from Fair Syndicate, Inc., from which they received their cash payments under the agreements (Fn. 1, supra). Having executed such agreements, each received a cash payment which he likely would never have received in the contemplated litigation, or otherwise.

In Pugh v. Turner, 145 Tex. 292, 197 S.W.2d 822, 826–827, 172 A.L.R. 707 (1946), the court upheld such an agreement, resting in part upon insolvency of the debtor, as being "sufficient to raise the issue of accord and satisfaction." See also: 1 C.J.S. Accord & Satisfaction § 30, p. 508; Rotan Grocery Co. v. Noble, 36 Tex. Civ.App. 226, 81 S.W. 586, 588 (Tex.Civ. App., 1904, error ref.); Minchen v. Vernor's Ginger Ale Co. of Houston, 198 S.W. 2d 613, 615 (Tex.Civ.App.—Galveston, 1946, no writ). A similar result was reached in McCreless Shopping Village, Inc. v. Burton, 352 S.W.2d 802, 804 (Tex.Civ.App.— San Antonio, 1961, error ref. n. r. e.). The acceptance of the cash consideration by plaintiffs at a time when the debtor, Fair, was insolvent, furnished adequate consideration supporting the Settlement Agreements. The same authorities dispose of the contention that there could be no accord and satisfaction when the amount of the debt is not in dispute, especially when the cash paid was money borrowed from a third person. 41 A.L.R. 1490.

Plaintiffs' contention that the failure to include all of Fair's creditors in the Settlement Agreements renders the same ineffective is likewise without merit. Curlee Clothing Co. v. Uberman, 273 S.W. 899, 900 (Tex.Civ.App.—Waco, 1925, no writ).

Finally, plaintiffs entered into the new agreement, an accord and satisfaction; and, retaining the benefits thereof, seek to recover the amount of their original claim against Fair. Having entered into an accord and satisfaction, they are bound thereby. Texas & Pacific Railway Co. v. Poe, 131 Tex. 337, 115 S.W.2d 591, 592 (1938); Industrial Life Insurance Company v. Finley, 382 S.W.2d 100, 105 (Tex.Sup., 1964).

But, plaintiffs contend that they reserved other rights in the Settlement Agreements, viz., the right to file liens after the close of HemisFair, such language being noted in the margin.[11] In the first place, in a prior appeal from an order denying a temporary injunction, the Fourth Court of Civil Appeals at San Antonio, in an unpublished opinion by Associate Justice Cadena, denied the existence of any basis for such liens. No. 14769, Guido Bros. Construction Co., et al v. City of San Antonio, et al, June 11, 1969.

The court commented upon the fact that the land in question (that covered by Fair's lease from City upon which HemisFair was held and upon which plaintiffs sought to impose their liens) "was acquired for a public purpose." It then held that at common law public property could not be subjected to a lien and under statutes providing for mechanics' liens, the imposition of such liens upon public property is not authorized "unless such property is expressly included within the operation of the statutes."

In the course of the opinion, Justice Cadena considered the provisions of the Hardeman Act (Articles 3452–3456, 3458–3460, 3463, 3464, 3466–3471 as amended), and the McGregor Act (Articles, 3472a–3472d,

as amended), and came to the conclusion that plaintiffs had no claim upon which a valid lien could be predicated. It was also noted in the opinion that the temporary leasing of the land by City to Fair "did not divest it of its character as public property" and that there was "nothing in the statute [Section 11(e) of the Urban Renewal Act, Article 1269l–3, V.A.C.S.] to indicate that the Legislature intended to empower such lessees to encumber the reversionary interest."

Plaintiffs recovered their judgment upon the terms of the Settlement Agreements; and, included therein as an integral part was a release of City, supra, p. 6. The "'release binds as effectively as a prior judgment.'" Hart v. Traders & General Insurance Co., 144 Tex. 146, 189 S.W.2d 493, 494 (1945). See also, R. C. Bowen Estate v. Continental Trailways, Inc., 152 Tex. 260, 256 S.W.2d 71, 73 (1953). The release is a bar to any right of action growing out of the matter discharged [Chouquette v. McCarthy, 56 S.W. 956 (Tex.Civ. App., 1900, error ref.)] and conclusively estops the releasor, plaintiffs, from making further efforts to enforce the claim released, McClure v. Fall, 67 S.W.2d 231 (Tex.Com.App., 1934), the latter two cases being cited by Chief Justice Hickman in Hart, supra.

■ We consider now the cross-points of plaintiffs asserting error on the part of the trial court in refusing to enforce the liens upon the property which had reverted to City after the termination of Fair's lease. The motions of City and of Fair to strike these cross-points are each overruled since the cross-points were properly assigned under the provisions of Rule 353(c). How-

11. As a proviso attached to paragraph 6 in the Settlement Agreement, the release section, we find these words: "* * * provided, however, that nothing herein shall preclude the enforcement by the undersigned contractor of all rights and benefits conferred herein or prevent the recording and enforcement of appropriate liens against specific property if enforcement of such liens shall not be undertaken until after October 6, 1968, or such subsequent date in 1968 when the fair closes. It is expressly provided, however, that by the foregoing provision, neither San Antonio Fair, Inc., Fair Syndicate, Inc., nor their successors admit or recognize the validity of any such liens or shall be precluded from asserting any defenses to such liens."

**168**

ever, we find no merit to the contentions so advanced by plaintiffs. As to the right to affix liens to the publicly owned property, we adopt the opinion of the San Antonio Court upon the prior appeal in the injunction phase of the litigation. The additional facts which we find in our record are insufficient to change the rule of law invoked and applied by Justice Cadena. Furthermore, plaintiffs failed to establish their debt against City, and any additional comment upon their right to affix liens would be surplusage.

Our analysis of the voluminous record leads us to the inevitable conclusion that plaintiffs are not entitled to prevail upon any of the numerous theories urged, and particularly may not prevail upon the one forming the basis of the judgment. The procedural points urged upon us by City and by Fair are not, under this view of the record, reached in our discussion.

The judgment of the trial court is now reversed and judgment rendered for the appellants, City and Fair.